UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DOMINIK KUFNER,
Petitioner,

No. CA 07046S

v.

TINA KUFNER,
Respondent.

**PETITIONER'S MOTION FOR ORDERS REGARDING THE CHILDREN AND FOR SANCTIONS AGAINST RESPONDENT, INCLUDING AN ORDER REQUIRING HER TO PAY A SANCTION TO THIS COURT, PLUS PAY PETITONER'S LEGAL FEES, COSTS AND RELATED EXPENSES**

## I. Current Status

As explained in detail below, respondent, Tina Kufner (Mother) has made intentionally false and misleading claims to this Court.

Here, under oath (Certification of Tina Kufner In Support of Modification of Ex Parte Order, ¶¶ 3 & 8), and as recently as last Tuesday, February 13, 2007, Mother represented she had to flee Germany and remove the parties' two young children to Rhode Island to protect them from risk of great harm by Dominik Kufner (Father). **Therefore, to protect the children, she intends to remain here.** (Id, ¶ 7). Mother's counsel also represented the children want to stay with here with her and not return to their friends, school, relatives and life in Germany.

However, as recently as February 7, 2007, Mother **made contrary representations to the court in Germany.** There

**she claimed she went to Rhode Island merely to rest and visit with her family, after which she fully intended to return to Germany.** (See, e.g. attached Exhibit 1, page 3). There, Mother went on to say she would already be back in Germany but she cannot leave the USA because of the case pending in this U.S. District Court - thus intimating to that court Mother is the object of a restraining order over which she has no control.[1] What is wrong with this picture?

Furthermore in December 2006, less than one month before Mother removed the children from Germany, she signed an affidavit swearing to the representations of her counsel (Exhibit 2). Among other things she assiduously asserted she had absolutely no intention of removing the boys from Germany "without [Father's] consent" (Exhibits 2, pg 2, ¶ "2)"). In that long instrument, Mother makes no claim that the boys are in danger of great harm from Father which therefore requires her to flee that jurisdiction. Nor does she claim that the boys want to go live with Mother in Rhode Island.

---

[1] In fact, the orders of this Court do not prevent Mother from returning to Germany. Rather, it prevents her from removing the boys further than 100 miles from this Court. That same order does not preclude Mother giving physical custody of the boys to Father so that he could return to Germany with the boys.

This Court, in fairness, should bind Mother to representations she made to the court in Germany. Mother ought not to be permitted to get away with making one claim here and the opposite claim there. Indeed, this is precisely the type of forum shopping which the Hague Convention and ICARA are intended to prevent. At the outset of this case, or even just last Tuesday when both parties and counsel were present at court for a lobby conference in which the court inquired if there was a way to resolve this matter without a trial, Mother was obligated to tell this Court what she told the court in Germany. If Mother had done so, this Court could have promptly issued an order granting Father temporary custody of the boys for the purpose of his immediately taking them back to Germany; and then leaving it to the parties to seek further orders from that court.

If just last Tuesday, Mother had requested this Court to dissolve its restraining order against her so, consistent with her Exhibit 2 representations, she could promptly return with the children to Germany, there would have been no need for her children and the Father to undergo another evaluation - this one by the court-appointed Guardian Ad Litem, no need for Father to spend tens of thousands of dollars for legal fees, expert

witnesses, translations of hundreds of pages from German to English, no need for trial preparation, and on and on. All the while, here, Mother is not incurring any legal fees.[2] What is wrong with this picture?

Mother did not tell the court in Germany she had to leave that jurisdiction in order to protect her children from risk of grave harm that she contended would be caused by their Father. There, in the context of an on-going custody case, in which Mother has churned her way through some eight or nine different lawyers, Mother claims she, not Father, should have primary physical custody of the children.

On February 19, 2007, the German court-annexed psychologist issued her well reasoned 24-page report (Exhibit 3), concluding that Father, not Mother, should decide where the children should live (i.e., that Father be granted legal custody of the two children). Mother was found to be unable and unwilling to accept that the

---

[2] The Sullivan and Worcester web site says the firm supports this pro bono project in order to permit their young associates to gain trial experience. But, unlike Attorney Nissenbaum in his pro bono representation, where no one was paying him while representing numerous left-behind parents under this Hague Convention, the Sullivan and Worcester Attorneys are apparently receiving their respective salaries. While this is not intended to diminish their efforts on behalf of left-behind parents, when they represented to this Court that they "are here pro bono," they are being paid - just not by the Wife.

children loved and wanted to spend time with their father. Mother wants Father out of the children's lives. On the other hand, Father wants Mother to be involved in the lives of the children. The psychologist concluded that Father is the parent of choice. Father can best foster a good relationship between the children and their mother. Mother will, of course, have the right and opportunity to go forward with the custody and visitation case in Germany.

In the meantime, in an effort to fulfill her nefarious agenda, Mother has no right to tell this Court one thing while telling the German court something at the opposite end of the spectrum. Both of the Mother's propositions cannot simultaneously be true. Curiously, while telling this Court that the children are at grave risk of harm if they return to Germany, she contemporaneously, as recently as February 7, 2007, did not claim there the children would be at grave risk of harm from Father if they had to come back from Rhode Island.

In an effort to mislead the German court, Mother made a series of preposterous claims, built on a kernel of truth – that the two boys were sick, one with an ear infection, so they were both home from school. Mother claims (Exhibit 2, page 2) she suddenly decided to take the boys with her to Rhode Island so she could rest up while visiting her

parents. In that way she could recharge her batteries, after which she fully intended to return, refreshed, to continue the court case in Germany. Mother then removed the boys from Germany without asking permission so to do from either Father or from that court. To do so, Mother had to tell the U.S. Counsel (who, per a court order there was holding the boys U.S. passports to January 31, 2007) some fancy story to gain a release of those passports!

While acknowledging they were too sick to go to school, Mother concluded the boys were well enough to fly some 4000 miles. Not surprisingly, when she got to Rhode Island she needed to take one child to hospital to deal with his now-worsened ear infection - something which should have mandated the child stay off an airplane!

While telling this Court that the children want to stay with her in Rhode Island, Mother makes no such claim to the court in Germany. **Mother did tell that court she is prevented from returning to Germany at this time because of an action pending in this Court, silently and improperly suggesting she is under some kind of restraining order about which she can do nothing.**

If must be that Mother knows full well that if she told this Court she wanted to return to Germany she could

expect this Court to fashion an order to ensure that the boys were, in fact, brought to Germany.

Mother cannot eat her cake and have it too. She cannot be permitted to say one thing to this Great Court, to justify her staying here with the two children, while telling the German court she wants to return there. No litigant should be permitted to provide intentionally false and misleading claims to this Court without knowing he or she will suffer a sanction.

The Mother's representations to the court in Germany must now be the basis of her self-fulfilling prophecy and the basis, as well for the following requested orders.

## II. Requested Orders

Based on the attached documents and other facts before this Great Court, the following orders should now be entered:

a. Mother and her counsel shall not be permitted to make any telephone calls until such time as the two boys are in the Father's custody.

b. The court shall order the clerk of this USDC to immediately release the two boys' USA and German passports to Father.

c. A U.S. Marshall shall accompany Mother to her parents' home and/or to the school where the boys may now be for the purpose of immediately picking up the parties' two children.

d. Father shall accompany the U.S. Marshall for the purpose of taking immediate physical custody of the two children.

e. Father should be granted temporary legal and physical custody, care and control of the two children for the purpose of immediately returning with the children to Germany where they shall live with him until such time as

the court in Germany enters such orders as it may deem fit and proper under the circumstances or written agreement of the parties.

f. Mother shall, at her sole expense, within twenty-four hours, pack and ship by air, using United Parcel Service, DHL or Federal Express, to the Father's home in Munich, Germany all of the clothing, toys, computers, electronic games, and other personal property of the two boys. She shall provide Father and this Court with her affidavit of compliance, together with a copy of the shipping invoice and tracking numbers.

g. The Mother shall be ordered to pay the Father's reasonable expenses in connection with his obtaining this order of return of the children, including, without limitation, his air travel to and from the USA, the air travel of the boys back to Germany, his expenses while in the USA seeking the order of return, his legal fees and related costs, including costs of translating documents

from Germany into English, and other costs as he may request, subject to a review by this court. In connection with this paragraph, Father and his counsel may, within 30 days submit their detailed bills, receipts, etc. Mother may file her objection within 15 days of the docketing of Father's request. Thereafter, this court will either issue an order or hold a hearing.

h. The Mother made numerous false and misleading claims to this court. Mother's intentionally false claims were entirely at odds with the goals and ideals in the Hague Convention on the Civil Aspects of International Child Abduction in which she sought shelter from an order of return. Accordingly, it is fair, reasonable, right, and necessary that Mother be sanctioned by a subsequent order requiring her to pay money into court. The Mother's conduct in this case shall serve as an example of what not to do, of what is not proper and what will

happen to others who offer false claims to this Great Court.

i. With his request for an award pursuant to paragraph f, supra, Father may also file a memorandum suggesting the amount and basis for an amount of an appropriate sanction. With her objection to the fees, as also specified above, Mother may file her objection to the amount of the sanction suggested by Father and/or offer her own suggestion.

The USDC is also requested to issue such further orders as it deems meet and just.

Respectfully submitted,

February 20, 2007 /s/ Charles A. Tamuleviz

Charles A. Tamuleviz, Esq.
(Fed. Bar #6115)
TAMULEVIZ, HULTQUIST, & BIANCHI, LLP
144 Westminster Street
Providence, Rhode Island 02903
401.490.2939
401.490.2940 (fax)

Gerald L. Nissenbaum, MABBO 372400
160 Federal Street, 24th floor
Boston, MA 02110

Bradford Neal Martin, Esq.
(Fed. Bar #3310)
BRADFORD NEAL MARTIN & ASSOC. PA

75 Beattie Place Suite 910
Greenville, South Carolina 29601
864.552.9990
864.552.9992 (fax)

ATTORNEYS FOR PLAINTIFF

CERTIFICATION OF SERVICE

On this 20th day of February 2007, I caused the instant **"PETITIONER'S MOTION FOR ORDERS REGARDING THE CHILDREN AND FOR SANCTIONS AGAINST RESPONDENT, INCLUDING AN ORDER REQUIRING HER TO PAY A SANCTION TO THIS COURT, PLUS PAY PETITONER'S LEGAL FEES, COSTS AND RELATED EXPENSES"** to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Neville J. Bedford, Esquire
321 South Main Street, 5th Floor
Providence, Rhode Island 02903

/s/Charles A. Tamuleviz
Charles A. Tamuleviz, Esquire
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-mail: cat@thbrilaw.com