UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Case No. CA 07 046S

DOMINIK KUFNER,
Petitioner,

v.

TINA KUFNER,
Respondent.

# PETITIONER'S MEMORANDUM ON EXPEDITED PROCEEDING AND AFFIDAVITS IN HAGUE CONVENTION CASES

The Hague Convention mandates the prompt disposition of the case. Article 11 states in unequivocal terms:

> The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children. If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay.

This language clearly anticipates that six weeks is sufficient time for the court to reach a decision on the petition. A review of the cases discloses many courts are well under that mark.[1]

---

[1] Walton v. Walton, 925 F.Supp. 453 (S.D. Miss. 1996) (court ruled on merits of petition thirty days after petition was filed); In re Coffield, 96 Ohio App.3d 52, 644 N.E.2d 662 (1994) (Twenty-one days); Navarro v. Bullock, 15

The Convention's drafters envisioned a streamlined process that would lead to the abducted child's prompt return to his or her habitual residence. The Convention provides that "[c]ontracting [nation-]States shall act expeditiously in proceedings for the return of children. The goal of ICARA is that the Country addressed will reach a decision as to where the custody hearings will take place within six weeks. If a determination has not been made in six weeks, then "[t]he applicant or the Central Authority of the requested State . . . shall have the right to request a statement of the reasons for the delay[ed proceedings]." Moreover, a reply from the Country Addressed shall be provided as to the reason for the delayed proceedings.

The heart of the Hague Convention is urgency and utmost efficiency: "The [Hague] treaty requires not only expeditious action by courts under article 11, … but use of 'the most expeditious procedures available.'" March v. Levine, 249 F.3d 462, 474 (6th Cir. 2001) (quoting Hague Convention, art. 2). The drafters of the Hague treaty "stressed the emergency nature of these cases: 'Its nature

---

Fam. L. Rep. (BNA) 1576 (Cal. Super. No. 86481 1989)[eight days]; Grimer v. Grimer, 1993 WL 545261 (D.Kan. 1993) [seven days]; Levesque v. Levesque, supra, 816 F.Supp. 662 (D.Kan.)[nine days]; David S. v. Zamira S., supra, 574 N.Y.S.2d 429 [forty-four days].

is one of emergency because it seeks a speedy and immediate solution to the cases involved.'" Id, quoting Elisa Perez Vera,[1] *Report of the Special Commission, in* "3 Actes et documents de la Quatorzieme Session 172, 179 ¶ 25" (Permanent Bureau of the Hague Conference on Private International Law ed. and trans. 1980) (official English translation)).

The urgent and immediate nature of Hague Convention hearings obviates the use of the Federal Rules of Evidence; instead, the more relaxed Hague evidentiary standards govern these proceedings. The Federal Rules of Evidence expressly provide that they are inapplicable to summary proceedings: "These rules apply generally to civil actions and proceedings … except those in which the court may act summarily." Fed.R.Evid. 1101(b)(2007). The summary proceedings contemplated by the Hague Convention fit well within this stated exception.

In addition to the requirement of expeditious action, the Convention, which is also characterized as a treaty, has a number of provisions to help ensure that return proceedings are handled in such a manner that return of

---

[1] Ms. Perez served as the official reporter for the diplomatic conclaves which were required for the drafting of this Convention.

children to their country of habitual residence is likely. March v. Levine, supra, 249 F.3d at 474. "For example, the treaty sets forth generous rules regarding authentication of documents and judicial notice. Hague Convention, art. 14." Id. at 474-75. These rules should be applied to the hearings in this case to streamline the proceedings to accomplish their intended purpose.

Likewise, ICARA repeatedly uses the word "prompt" to describe the nature of proceedings for the return of a child who was allegedly wrongfully removed or retained. 42 U.S.C. § 11601(a)(4). The implementing legislation, like the treaty itself, provides a generous authentication rule. 42 U.S.C. § 11605 ("[N]o authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court." "Such a provision serves to expedite rulings on petitions for return of children wrongfully removed. … Expeditious rulings are critical to ensure that the purpose of the treaty – *prompt* return of wrongfully removed …children – is fulfilled. Hague Convention, art. 1." March v. Levine, supra, 249 F.3d at 474-75 (emphasis in original). The March Court goes on to discuss summary proceedings affidavits and legal analysis of The Hague by Perez Vera

and reaching the conclusion that summary judgment was awarded before discovery and an evidentiary hearing. The opinion discusses the concept from 473-474:

> At the same time, however, the plain language of Rule 56 "does not specifically require or even expressly authorize receipt of oral evidence and other types of evidence in a hearing setting." 11 James Wm. Moore et al., Moore's Federal Practice § 56.15[1][a], at 56-200 to 56-201 (3d ed.2000). Moreover, "oral testimony is not favored in summary judgment proceedings due to the well founded reluctance to turn a summary judgment hearing into a trial." *Id.* at 56-202. Further, a court has discretion to hear evidence on motions by oral testimony or on affidavits. Fed.R.Civ.P. 43(e) Here, the court properly elected the latter.
>
> **474* [16] However, these are not the only concerns at issue in this case. As the district court properly observed, the Hague Convention and the ICARA raise unique concerns:
> [T]his type of case is appropriate for resolution by summary judgment. Indeed, the language of the Convention supports resolution by such means. Article 11 provides that a court, when faced with a petition under the Convention, should "act expeditiously in proceedings for the return of children." Courts are to place these cases on a "fast track" in order to expedite these proceedings and carry out the purposes of the Convention.
>
> The language of the Convention also authorizes courts to "take notice directly of the law of, and of judicial and administrative decisions, formally recognized or not in the State of the habitual residence of the child, without

recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable."

There is no requirement under the Hague Convention or under the ICARA that discovery be allowed or that an evidentiary hearing be conducted. Thus, under the guidance of the Convention and the statutory scheme, the court is given the authority to resolve these cases without resorting to a full trial on the merits or a plenary evidentiary hearing. March, 136 F.Supp.2d at 833-34 (citations omitted).

We agree. The petition for return of children at issue here is not a run-of-the-mill case that falls within the general rule so that it may be said that the district court abused its discretion. Rather, this case involves a petition under a unique treaty and its implementing legislation, neither of which expressly requires a hearing or discovery. In fact, the treaty requires not only expeditious action by courts under article 11, as the district court properly noted, but use of "the most expeditious procedures available." Hague Convention, art. 2. Indeed, the drafters of the treaty stressed the emergency nature of these cases: "Its nature is one of emergency because it seeks a speedy and immediate solution to the cases involved." Elisa Pérez Vera, *Report of the Special Commission, in* 3 Actes et documents de la Quatorzieme Session 172, 179 ¶ 25 (Permanent Bureau of the **Hague** Conference on Private International Law ed. and trans. 1980) (official English translation). [FN 10]

===

FN 10. According to the Legal Analysis of the **Hague Convention** prepared by the Department of State, the Perez Vera Report "is recognized ... as the official history and commentary on the **Convention** and is a source of background on the meaning of the provisions of the **Convention**." Legal Analysis of the **Hague Convention on the Civil Aspects of International Child Abduction**, 51 Fed.Reg. 10,494, 10,503 (March 26 1986); see also Whallon v. Lynn, 230 F.3d 450, 455 n. 5 (1st Cir. 2000).

====

In addition to the requirement of expeditious action, the treaty has a number of provisions to help ensure that return proceedings are handled in such a manner and that return of children to their country of habitual residence is likely. For example, the treaty sets forth generous rules regarding authentication of documents and judicial notice. Hague Convention, art. 14. The treaty further provides rights to petitioners when a decision is not rendered within a mere six weeks of filing their petition. Hague Convention, art. 11. Importantly, the treaty also provides that a court may order return of a child at any time, notwithstanding proof of treaty defenses. Hague Convention, art. 18 ("The

* *475* provisions of this Chapter [pertaining to return of children] do not limit the power of a judicial or administrative authority to order the return of the child at any time.").

Likewise, the ICARA repeatedly uses the word "prompt" to describe the nature of proceedings for the return of a child wrongfully removed or retained. 42 U.S.C. Section 11601 (a)(4). Like the treaty itself, the implementing legislation also provides a generous authentication rule.

42 U.S.C. Section 11605 ("[N]o authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court."). Such a provision serves to expedite rulings on petitions for return of children wrongfully removed and retained.

Expeditious rulings are critical to ensure that the purpose of the treaty--*prompt* return of wrongfully removed or retained children--is fulfilled. Hague Convention, art. 1.

We further note that courts in other Contracting States to the treaty have also upheld summary proceedings on review. For example, an Australian court has held that the Convention's primary purpose "is to provide a summary procedure for the resolution of the proceedings and, where appropriate, a speedy return [of children] to the country of their habitual residence." In the Marriage of Gazi, (1992) 16 Fam. L.R. 180, ¶ 9, *available at http:// scaletext.law.gov.au/html /famdec /0/92/0/ FM000720.htm* (last visited March 22, 2001). The Australian court therefore ruled that the trial court "properly adopted a summary form of procedure." *Id.* (opining that allowing cross-examination of deponents of affidavits may be appropriate in rare cases; noting that it was apparent that the trial court had considered all relevant material before it, including affidavits).

Finally, we note that although the district court ruled that it would decide the motions before it without discovery, it nonetheless entered a voluminous amount of evidence into the record from both parties. Indeed, over 1,300 pages were filed with the district court and made part of the record on appeal. Moreover,

> review of the district court's opinion reveals that the court carefully considered the evidence both parties offered and independently sought information on its own volition. In sum, given the unique nature of this treaty, we hold that the district court did not abuse its discretion when it granted summary judgment in favor of March prior to discovery or an evidentiary hearing.

A Hague Convention hearing is just the type of "summary proceeding" to which Rule 1101(b) refers as an exception to the applicability of the federal rules. Id. (noting that "the [Hague] Convention's primary purpose is to provide a *summary procedure* for the resolution of the proceedings and, where appropriate, a speedy return [of children] to the country of their habitual residence") (emphasis added). Other decisions agree with the view that a Hague Convention hearing is a summary proceeding to which the Hague evidentiary standards, not the federal rules of evidence, apply. See Didur v. Viger, 197 Fed. App. 749 (10th Cir. 2006) (recognizing that the district court admitted evidence under "the relaxed standards of the Hague Convention"); Zajaczkowski v. Zajaczkowski, 932 F.Supp. 128 (D. Md. 1996) (in proceedings under the Hague Convention, the court would not apply the federal rules of civil procedure but would treat the petition as an application for a writ of habeas corpus due to the imperative of swift

action under the Hague Convention); Feder v. Evans-Feder, 63 F.3d 217 (3d Cir. 1995) (under article 14 of the Hague Convention, court could take judicial notice "without recourse to specific procedures for proof"). In other contexts, courts similarly have found the federal rules to be inapplicable in preliminary hearings under exigent circumstances. See, e.g., United States of America v. Zannino, 1985 WL 2305 (D. Mass. 1985) (the federal rules of evidence were not binding on a preliminary hearing predicated on a motion to continue a trial due to physical incapacity); People of Guam v. Santos, 1999 WL 104499 (Guam Sup. Ct. 1999) (Guam rules of evidence, like the federal rules, do not apply at suppression hearings).

In a case involving the return of children to a parent in Mexico, the *March* court interpreted the term "prompt" to apply to the nature of the court proceedings. This ruling was confirmed by the appellate court. The *March* court stated that "[ICARA] provides a generous authentication rule." "No authentication of such application, petition, document or information shall be required in order for the application, petition, document or information to be admissible in court." The *March* court clarified that, "the provision served to expedite rulings on petitions for the

return of children wrongfully removed or retained. Expeditious rulings are critical to ensure that the purpose of the treaty—prompt return of wrongfully removed or retained children—is fulfilled.

There is a growing trend to litigate Convention claims by the filing of a petition for writ of habeas corpus[2]. This procedure is familiar to family law practitioners as a remedy to obtain a child who is being illegally held by a parent or other person. Its use in Convention cases is particularly appropriate. In Zajaczkowski v. Zajaczkowski, 932 F.Supp. 128 (D.Md. 1996), the trial court treated father's pro se petition for return of a minor to Poland as a petition for writ of habeas corpus.

> Unquestionably at the heart of the Convention is prompt action by courts. (Citations omitted). This comports with the obvious desideratum that any dispute involving custody of a child be decided quickly so as to minimize the anxiety and unsettlement of the child and to avoid assimilation of the child into strange environs which could lead to subsequent difficulties in separation. (Citations omitted). The rules of procedure applicable to ordinary civil cases would seem to be at odds with the Convention and ICARA's premium on expedited decision-making. * * * In the Court's view, however, there exists a

---

[2] See, e.g. Walton v. Walton, supra, 925 F.Supp. 453; Brooke v. Willis, 907 F.Supp. 57, (S.D.N.Y., 1995), , combining a complaint and petition for the return of the child with a petition for writ of habeas corpus.

> familiar vehicle suitable to these circumstances and that is the writ of habeas corpus. (Footnote omitted). While the writ is not mentioned in ICARA, its office is to test the legality of an alleged wrongful detention. (Citation omitted). This translates rather easily into a test of wrongful abduction or retention within the meaning of the Convention. The Federal Rules of Civil Procedure are only applicable to proceedings for habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." (Citations omitted). The key purposes of the habeas remedy are strikingly similar to those behind the Convention and ICARA. First, as a procedural device, writs of habeas corpus are to be dealt with in an expeditious manner. They are intended to afford a swift and imperative remedy in all cases of illegal restraint or confinement. (Citations omitted). A habeas application usurps the attention and displaces the calendar of the judge who entertains it and receives prompt action from him or her within the four corners of the application. (Citation omitted). The Convention likewise contemplates quick action; a period of six weeks from the date of the filing of the petition to the court's decision is envisioned. The time frame associated with habeas matches the intent of the Convention far better than ordinary federal procedural rules would. Id., 932 F.Supp. 128, 130-131.

In actual practice, delay has become a major factor to contend with in the effective implementation of the Convention. According to the Report of the Second Special Commission Meeting to Review the Operation of the Hague Convention on the Civil Aspects of International Child Abduction 33 I.L.M. 225 (1994):

> Delay in legal proceedings is a major cause of difficulties in the operation of the Convention. All possible efforts should be made to expedite such proceedings. Courts in a number of countries normally decide on requests for return of a child on the basis only of the application and any documents or statements in writing submitted by the parties, without taking oral testimony or requiring the presence of the parties in person. This can serve to expedite the disposition of the case. The decision to return the child is not a decision on the merits of custody." 33 I.L.M. 225 (1994) 229-230.

When parties appeal Convention cases, " promptness" regrettably becomes a relative term. Nevertheless, courts of appeal have acknowledged the spirit of the convention, and have directed that upon remand from the courts of appeal, that trial courts act expeditiously to conclude the case.[3] One court has obtained a waiver of the time limits given in which to file appellate briefs.[4] Others have used expedited procedures for the determination of the appeal.[5]

---

[3] Nunez-Escudero v. Tice-Menley, 58 F.3d 374 (8th Cir. 1995), noting: "This action was commenced in December 1993, over eighteen months ago. To meet our country's treaty commitment, which was entered into to discourage child abductions and thereby to benefit children of all signatory nations, it is now essential that the parties and the district court expedite the final determination of this dispute." 58 F.3d 374, 379.

[4] In re Coffield, supra, 96 Ohio App.3d 52, 644 N.E.2d 662 noting at p. 663: "Following the filing of the notice of appeal, the parties to this appeal expressly agreed to waive the time requirements under the Ohio Rules of Appellate Procedure governing the filing of the record and the appellate briefs. This waiver was made in recognition of the unique nature of the appeal's subject

Supporting the concept of an expeditious hearing, ICARA provides that authentication of documents in Convention proceedings is not required. Thus, copies of documents provided by a Central Authority or the litigants themselves, do not require the formal process of authentication normally utilized in court proceedings.[6]

Practices differ among courts as to whether testimony is required from the parties, or whether testimony is required from the parties, or whether the court may determine the application on the basis of affidavits or declarations. One case supporting determination on the basis of written declarations of the parties is Wiprank v.

---

matter and the need for a speedy resolution of the underlying dispute between the parties."

[5] Ivaldi v. Ivaldi (1996) 288 N.J.Super. 575, 581, 672 A.2d 1226, 1229.

[6] " With respect to any application to the United States Central Authority, or any petition to a court under section 11603 of this title, which seeks relief under the Convention, or any other documents or information included with such application or petition or provided after such submission which relates to the application or petition, as the case may be, no authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court. " 42 U.S.C. 11605.

Superior Court, 63 Cal App.4th 315, 73 Cal, Rptr2d 734 (1998).

## Conclusion

The issue of a prompt decision and the relaxation of the Federal Rules to provide a prompt decision of the issue of return mandates that the court accept affidavits and rule on the facts which have been gained from these affidavits.

February 20, 2007 /s/ Charles A. Tamuleviz

Charles A. Tamuleviz, Esq.
(Fed. Bar #6115)
TAMULEVIZ, HULTQUIST, & BIANCHI, LLP
144 Westminster Street
Providence, Rhode Island 02903
401.490.2939
401.490.2940 (fax)

Gerald L. Nissenbaum, MABBO 372400
160 Federal Street, 24th floor
Boston, MA 02110

Bradford Neal Martin, Esq.
(Fed. Bar #3310)
BRADFORD NEAL MARTIN & ASSOC. PA
75 Beattie Place Suite 910
Greenville, South Carolina 29601
864.552.9990
864.552.9992 (fax)

ATTORNEYS FOR PLAINTIFF

CERTIFICATION OF SERVICE

On this 20th day of February 2007, I caused the instant Plaintiff's Opposition to Defendant's Motion to Quash Her Deposition or Alternatively: Plaintiff's Motion to Compel Defendant's Deposition for Next Tuesday Morning to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Neville J. Bedford, Esquire
321 South Main Street, 5th Floor
Providence, Rhode Island 02903

/s/Charles A. Tamuleviz
Charles A. Tamuleviz, Esquire
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-mail: cat@thbrilaw.com