UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DOMINICK KUFNER, Petitioner, | ) | |
| v. | ) | Civil Action No. 07-046S |
| TINA KUFNER, Respondent. | ) | |

**RESPONDENT TINA KUFNER'S TRIAL BRIEF**

Respondent Tina Kufner ("Ms. Kufner") respectfully submits this trial brief in support of her request that this Court either deny the petition outright, or order a sufficient evaluation of the children and circumstances to protect them from a grave risk of physical or psychological harm, or an otherwise intolerable situation.

**Factual Background**

This action poses the question of whether two children should be forced to reside in Germany, contrary to what is in their best interests, under intolerable circumstances that present a grave risk of physical or psychological harm to them, and against their wishes. The children are boys, ages 7 and 8. They are United States citizens who speak English as their first language, and are not fluent in German. Ms. Kufner and the children have spent approximately more than two months each year at her family home in Rhode Island.

The Petitioner has engaged in conduct that calls into question his ability to protect the children and his propensity to harm them. During their marriage, the Petitioner informed Ms. Kufner that his grandmother raised him for a portion of his childhood because his father had

molested him. On one or more occasions, the Petitioner took nude photographs of the children. Some of the photographs focus on the children's genital or anal regions, while the children appear in unnatural poses. Red marks of unknown origin appear on the children in certain photographs. The Petitioner has a history of renting pornographic materials involving young actors. He also made sexual advances toward a young au pair, scaring her into barricading herself in a room and then permanently leaving the premises early the next morning. The Petitioner and his family have tremendous resources, and they have used them to dominate litigation with Ms. Kufner in Germany.

The German court has issued several decrees that are far from clear as to their effect. An early document suggested the recognition of joint custody, which is a new and poorly defined concept in Germany. More recent orders from Germany reflect only an award to the Petitioner of visitation and access rights, along with what is known as a *ne exeat* clause, which restricted travel with the children. The recent orders do not state that the Petitioner has joint legal custody of the children, and in substance contemplate primary custody held by Ms. Kufner with only visitation and access rights enjoyed by the Petitioner.

While resolving other divorce issues, the German authorities did *not* conduct an adequate evaluation to protect the children. As best can be gleaned from German court files, the children were not even interviewed about the pornographic photographs. Apparently, comprehensive reports were never prepared reflecting efforts to investigate the photographs or reasons for any particular conclusions. The court record does not even indicate which photographs had been submitted, let alone properly reviewed. Documents indicate that the children did experience unusual bedwetting behavior and nervous twitching, but no trauma evaluation was ever performed. Rather than address the serious issues regarding the exploitation of the children, the

German court concluded that both parents blamed each other too much and need to change that form of behavior.

It is anticipated that expert testimony at trial will confirm that the circumstances surrounding the father's mistreatment of the children in Germany posed red flags that required a significantly more substantial evaluation of the children, the exploitation of them, and any trauma they have suffered.

**Legal Issues**

There are at least three issues presented by this case under the Hague Convention on the Civil Aspects of International Child Abduction. First, did the Petitioner have legal custody rights at the time of the removal of them to the United States? Second, does the return of the children pose a grave risk of physical or psychological harm, or an otherwise intolerable situation? Third, is either of the children of sufficient age and maturity to have his viewpoint taken into account?

**I. Children Cannot be Returned to a Foreign Country when only Access Rights and *Ne Exeat* Provisions May Have Been Breached.**

It is expected that the Petitioner will present at trial documents from German courts that contain certain provisions regarding parental rights. The most recent documents do not afford him custody rights, but rather only visitation, access and *ne exeat* rights. Only an early, and apparently superceded document, contemplated joint custody, without defining that term. In Germany, joint custody is a relatively new and undefined concept. The issue is therefore whether the visitation access, and *ne exeat* rights can support the Petitioner's claim for the return of the children to Germany. *See Cantor v. Cohen*, 442 F.3d 196, 200 (4th Cir. 2006) (explaining that under the Hague Convention a petitioner "has no right to initiate judicial proceedings for access claims").

Though an issue of first impression in this Circuit, in the seminal case of *Croll v. Croll*, 229 F.3d 133 (2d Cir. 2000), the Second Circuit rejected a Hague Convention claim based on the violation of a provision that the child shall "not be removed from Hong Kong until she attains the age of 18 years." The district court in *Croll* erroneously concluded that this provision, known as a *ne exeat* clause, conferred rights of custody within the meaning of the Hague Convention. The Second Circuit reversed, holding that the *ne exeat* clause did not provide petitioner with a right to determine the child's place of residence, but only a limitation on the mother's right to determine the child's place of residence, a limitation *not* enforceable through the Hague Convention. *Id.* at 137-43; *see Fawcett v. McRoberts*, 326 F.3d 491, 500 (4th Cir. 2003) (holding that *ne exeat* provision did not provide right of custody within the meaning of the Hague Convention); *Gonzalez v. Gutierrez*, 311 F.3d 942, 944-49 (9th Cir. 2002) (*ne exeat* provision creates "at most, a veto power," which does not suffice to elevate access rights to custody rights within the meaning of the Hague Convention).

Accordingly, the Petitioner bears the burden of demonstrating that he possessed and exercised valid custody rights, within the meaning of the Hague Convention, that have been breached by Ms. Kufner's removal of the children to the United States for their safety.

## II. The Children Cannot be Returned to Germany, Consistent with Article 13(b) of the Hague Convention, Because They Face a Grave Risk of Physical or Psychological Harm, Particularly in the Absence of a Sufficient Forensic and Trauma Evaluation.

Article 13(b) of the Hague Convention prohibits the return of children to a foreign country when they face a 'grave risk of physical or psychological harm, or an otherwise intolerable situation.' *Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir. 2000) (reversing district court's erroneous rejection of Article 13(b) defense). The First Circuit has explained that, in Hague Convention matters, safety of the children is of paramount concern. *Danaipour v.*

*McLarey*, 386 F.3d 289, 302-03(1st Cir. 2004); *see Danaipour v. McLarey*, 286 F.3d 1 (1st Cir. 2002).[1] In *Danaipour*, the First Circuit reversed the district court's erroneous refusal to conduct a forensic evaluation of sexual child-abuse allegations that were raised by a respondent's Article 13(b) defense. Specifically, the respondent-mother had claimed, as part of an Article 13(b) defense, that her three year old daughter had made certain gestures and disclosures that could be interpreted as evidence of sexual abuse at the hands of her father. While the young girl did not testify, the district court found the questions difficult to resolve, and attempted to defer to foreign authorities for the completion of an evaluation. The First Circuit rejected that approach, and held that "the sexual abuse question must be decided (as part of the court's obligation to consider the grave risk issue) ...." *Danaipour*, 386 F.3d at 292. On remand, the district court ordered the completion of a forensic examination and held against the father his refusal to participate, a decision that was affirmed on appeal, thereby allowing the children to remain in the United States. *Id.* at 303-04. .[2]

Here, the allegations are not rooted in mere ambiguous gestures or disclosures of a three-year old, as was present in *Danaipour*, but rather in pornographic photographs of the children, a

[1] German courts have gone much further to incorporate the "best interests of the child" standard into Hague Convention proceedings. Indeed, German courts have found that Article 13(b) can be satisfied by showing that the return of the child could harm the mother-child bond. Such an analysis is consistent with Article 3 of the United Nations Convention on the Rights of the Child, which states: "***In all actions concerning children***, whether undertaken by public or private social welfare institutions, courts of law, administrative authorities or legislative bodies, ***the best interests of the child shall be a primary consideration***." (emphases added). *See B v. B*, Family Court of Westerburg (Sept. 29, 1992) at http://hiltonhouse.com/cases/Bvb.frg (mother-child bond can be protected under Article 13(b)); *H v. H*, Family Court of Vechta (May 5, 1992) at http://hiltonhouse.com/cases/Hvh.frg (best interests of the child outweighed terms of Convention).

[2] The *Danaipour* decision also reflects the principle that this Court should not reject an Article 13(b) defense by returning the children to the foreign country subject to "undertakings" that cannot be enforced by this Court. A comparison of *Danipour* with a recent decision of the Third Circuit in *In re Adan*, 437 F.3d 381 (3d Cir. 2006) (reversing district court's summary denial of Article 13(b) defense), provides valuable insight regarding the need for proper undertakings to protect children when being lawfully returned, along with the improper use of undertakings as a substitute for procedural safeguards and rulings on an Article 13(b) defense.

pornographic video rental history of the Petitioner, and other corroboration. Under *Danaipour*, these red flags require a sufficient forensic evaluation of the children, the father and the problematic circumstances. Documents from Germany reveal even less attention to these serious issues than the Swedish authorities had given to the allegations of abuse in *Danaipour*. Hence, this Court should reject the petition under Article 13(b). The children are entitled to much more in the way of safeguards than the German courts were willing to afford.

**III. The Older Child's Viewpoints May be Taken into Account.**

Article 13 also provides that a child's viewpoint may be taken into account when determining whether to return children to a foreign country under the Hague Convention. Here, the 8-year old boy may be of sufficient age and maturity to have his viewpoint taken into account. Ms. Kufner reserves the right to present a defense based on the child's viewpoint, if deemed appropriate at trial. Circumstances reflect that the children are much happier and safer in Rhode Island.

**Conclusion**

Based on the foregoing, and the evidence that will be introduced at trial, this Court should reject the petition.

Respectfully submitted,

TINA KUFNER,

By her attorneys,

/s/ Neville J. Bedford

Neville J. Bedford (RI Bar #6817)
321 South Mail Street, 5th Floor
Providence, RI 02903-7108
(401) 709-4328 (phone)
(410) 633-6822 (fax)
nevillebedford@gmail.com

*Of Counsel*

Barry S. Pollack
Lindsay D. Barna
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800 (phone)
(617) 338-2880 (fax)
bpollack@sandw.com
lbarna@sandw.com

CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2007 the **RESPONDENT TINA KUFNER's TRIAL BRIEF** was filed through the ECF system and was sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants.

/s/ Neville J. Bedford