UNITED STATES DISTRICT COURT
THE DISTRICT OF RHODE ISLAND

DOMINIK KUFNER,
Petitioner,

C.A. No. 07-46S

v.

TINA KUFNER,
Respondent.

**PETITIONER'S MOTION AND MEMORANDUM RE GRANTING PROVISION REMEDY AND ENFORCEMENET OF FOREIGN CUSTODY ORDER.**

## I. Relief Requested.

1.1 Petitioner moves this court to order that he be granted immediate sole physical and legal custody care and control of the parties' minor children, pending an order that the parties' minor children be returned to Germany (order of return) or dismissal of the within petition.

1.2 In the event of an order of return, petitioner moves the relief requested in the next prior paragraph continue in effect while he and the children travel to Germany. By definition, at that point in time orders entered by the court in Germany will apply.

1.3 Petitioner also moves that respondent be ordered to immediately transfer to him all of their children's personal

clothing, toys and other effects she may have brought with her from Germany or sent here from Germany.

## II. Basis for Granting Requested Relief.

2.1 The International Child Abduction Remedies Act (ICARA) provides a basis for this court to order provisional remedies during the course of an action brought under the Hague Convention on the Civil Aspects of International Child Abduction (Convention). Federal law, specifically 42 USC 11601-11610, provides the framework for the bringing of an action.

2.2 More specifically, 42 USC 11604 provides the basis for provisional remedies.

> (a) AUTHORITY OF COURTS -- In furtherance of the objectives of article 7(b) and other provisions of the Convention, and subject to the provisions of subsection (b) of this section, any court exercising jurisdiction of an action brought under section 4(b) of this Act **may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment** before the final disposition of the petition. (Emphasis added).
>
> (b) LIMITATION ON AUTHORITY -- No court exercising jurisdiction of an action brought under section 4(b) may, under subsection (a) of this section, order a child removed from a person having physical control of the child

unless the applicable requirements of State law are satisfied.

2.3 In other words, this court may make provisional or emergency orders to both protect the child from further emotional or physical harm and, as well, to avoid a second kidnapping. However, when the child is in the physical custody of a parent, the internal law of the state must be satisfied before entering an order that the other parent be granted physical custody. This memorandum demonstrates why this court should make the requested orders pending decision of the court on the requested return of the children to Germany.

2.4 In a case decided on February 9, 2007, Alonzo v. Claudino, Slip Copy, 2007 WL 475340 (M.D.N.C.), the following occurred. On September 19, 2006, Mr. Alonzo filed a petition for the return of Maria Jose under the Convention. (Doc. # 2.) On November 9, 2006, Mr. Alonzo filed a petition requesting the government to take physical custody of Maria Jose pursuant to 42 U.S.C. § 11604(a) and N.C. Gen.Stat. § 50A-311. [FN1] (Doc. # 5.) On January 24, 2007, following a hearing, the petition to take physical custody was granted and a warrant was issued for the United States Marshal's Service to take custody of Maria Jose. (Doc. # 9.) The warrant was executed on January 24, 2007

and a second hearing was held that day after which Maria Jose remained in the custody of Mr. Alonzo pending the resolution of the case.

2.5 Footnote one in Alonzo started by quoting the above emphasized portion of 42 U.S.C. § 11604(a). It went on to observe that under North Carolina law, a court may issue a warrant to take physical custody of a child if, based on testimony of the petitioner or other witnesses, it is found "that the child is imminently likely to suffer serious physical harm or to be removed from this State." N.C. Gen.Stat. § 50A-311. *Cf*, McCullough v. McCullough, 4 F.Supp.2d 411, 414-15 (W.D.Pa.1998) (invoking 42 U.S.C. § 11604(a) in ordering the United States Marshal to bring the child before the court).

2.6 The Alonzo court used its authority to take custody from one parent and give it temporarily to the other parent until a decision was made. The court found that the law of the state in which the action took place allowed it to make such an order. In other Convention cases, courts have utilized their broad powers to insure compliance with their orders in a number

of ways, e.g. deposit of passports [both children and parent],[1] placement of children in receiving or foster home,[2] incarceration of a parent until the child is produced,[3] posting of a bond,[4] supervising contact with each parent and deposit of cash in lieu of bond.[5]

2.7 Various Courts have addressed the issue of access and temporary custody of the child while the Convention case is pending. The danger of a child being spirited away and the issue of brainwashing during the course of the hearing have led courts to order the child be in the temporary custody of the left behind parent, if that parent appears in the forum state of the hearing. Usually the children's passports are placed with

---

[1] Suki v. Suki, 1995 WL 631696; Koons v. Koons, 161 Misc.2d 842, 615 N.Y.S.2d 563, 566 (1994) (Italian Court); David S. v. Zamira S., 151 Misc.2d 630, 574 N.Y.S.2d 429, 434; Renovales v. Roosa, 1991 WL 204483 (Conn.Super. 1991); Viragh v. Foldes, 415 Mass. 96, 109, 612 N.E. 2d.

[2] David S. v. Zamira S., supra, 574 N.Y.S.2d 429, 434; Navarro v. Bullock, supra, 15 Fam. L. Rep. (BNA) 1576 (1989).

[3] Roszkowsi v. Roszkowska, 274 N.J.Super. 620, 626, 644 A.2d 1150 (1993) (incarceration requested, not imposed).

[4] Greene v. Greene, 1990 WL 56197 (Tenn.App. 1990)

[5] David S. v. Zamira S., supra, 151 Misc.2d 630, 574 N.Y.S.2d 429, 434.

the court and the litigants are restrained from leaving the jurisdiction of the court.

2.8 Similarly, at bar, this court has the power to take measures to protect the well being of the Kufner children while this Hague Convention case is pending. By following the law of the state of Rhode Island, this court has the power to determine which party shall have the child while this Convention case is pending.

2.9 Beyond that, when foreign courts issue orders awarding custody to one of the parents and that country is the habitual residence of the child, the question arises whether the court should give full faith and credit or comity to that court's decisions. In Diorinou v. Mezitis, 237 F.3d 133 C.A.2 (N.Y.), 2001 (Jan. 09, 2001) the court faced the issue of whether to honor a decision of the Greek Courts.

> American courts will normally accord considerable deference to foreign adjudications as a matter of comity. See, e.g., Hilton, 159 U.S. at 163, 16 S.Ct. 139, (enforceability of foreign country judgments a matter of the "comity of nations"); Victrix Steamship Co., S.A., 825 F.2d at 713; Restatement (Third) of Foreign Relations § 481 (1987) (recognition and enforcement of foreign judgments); Restatement (Second) of Conflict of Laws § 98 (1971) (recognition of foreign judgments).

> In particular, we have observed that comity 'is at the heart of the [Hague] Convention.' Blondin, 189 F.3d at 248; cf. Friedrich v. Friedrich, 78 F.3d 1060, 1068-69 (6th Cir. 1996) (narrowly construing defenses under article 13 of the Convention because courts of country *143 where abduction occurred may be relied on to protect child)." at page 142.

2.10 In addition, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which has been enacted in Rhode Island and its predecessor, the Uniform Child Custody Jurisdiction Act *UCCJA), both provide a basis for the enforcement of a Foreign States Judgment.

2.11 Section 105 of the UCCJEA, "International Application of [Act]" provides:

> (a) A court of this State shall treat a foreign country as if it were a State of the United States for the purpose of applying [Articles] 1 and 2.
>
> (b) Except as otherwise provided in subsection (c), a child-custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this [Act] **must be recognized and enforced under [Article] 3.** (Emphasis added).
>
> (c) A court of this State need not apply this [Act] if the child custody law of a foreign country violates fundamental principles of human rights.

Comment

The provisions of this Act have international application to child custody proceedings and determinations of other countries. Another country will be treated as if it were a State of the United States for purposes of applying Articles 1 and 2 of this Act. Custody determinations of other countries will be enforced if the facts of the case indicate that jurisdiction was in substantial compliance with the requirements of this Act.

In this section, the term "child-custody determination" should be interpreted to include proceedings relating to custody or analogous institutions of the other country. See generally, Article 3 of The Hague Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Co-operation in Respect of Parental Responsibility and Measures for the Protection of Children. 35 I.L.M. 1391 (1996).

A court of this State may refuse to apply this Act when the child custody law of the other country violates basic principles relating to the protection of human rights and fundamental freedoms. The same concept is found in of the Section 20 of the Hague Convention on the Civil Aspects of International Child Abduction (return of the child may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms). In applying subsection (c), the court's scrutiny should be on the child custody law of the foreign country and not on other aspects of the other legal system. This Act takes no position on what laws relating to child custody would violate fundamental freedoms. While the provision is a traditional

> one in international agreements, it is invoked only in the most egregious cases.
>
> This section is derived from Section 23 of the UCCJA.

2.12 On February 16, 2007 (Trial Exhibit 73) the court in the children's State of Habitual Residence, Germany, made a proper custody determination granting sole custody to petitioner and removing all custody rights from respondent. At that point in time, the respondent had no custody rights and had no order for her access (visitation) to the children. It must be noted that before the February 16, 2007 order was entered, petitioner filed his motion and gave notice to respondent. Then, on February 7, 2007 (Trial Exhibit 36), respondent filed her long and detailed opposition supported by no less than eleven (11) affidavits. Therefore, respondent cannot now claim lack of notice, lack of due process or lack of fairness.

2.13 Under the UCCJEA, this could is now obliged, at least on a temporary basis, to enforce the German court order dated February 16, 2007. The order, entered pursuant to the UCCJA, is in addition to authority given to this court in 42 USC 11604.

2.14 Further, 42 USC 11603 (h) specifically provides that the Convention is not to be the exclusive remedy available and

other remedies may be used to enforce the action.

> (h) REMEDIES UNDER THE CONVENTION NOT EXCLUSIVE -- The remedies established by the Convention and this Act shall be in addition to remedies available under other laws or international agreements.

2.15 Beyond being legally well-justified by the February 16, 2007 (Trial Exhibit 73) order, the requested order is even more justified by the content of Trial Exhibit 37, being the GWG final report by Christine Hertkorn a certified psychologist. In sum, after an intensive five-month investigation including interviews with the parties, their children, after the parents took psychological tests, after review of numerous written submissions by each party, and so on and so forth, the forensic experts concluded that the father, not the mother, is the parent of choice.

2.16 a. The basis for what those experts and the German court concluded can be seen by this court with its own eyes. Even while under what has often been called the magnifying glass of litigation, the mother ignored this court's order to provide unsupervised visitation of the children with the father, claiming they had to take "Chinese [language] lessons," the father had too much visitation with the children, and she wanted visitation to be supervised.

b. The mother went to the Rhode Island Family Court to seek a domestic relations restraining order against the father, even though she knew all proceedings in that court had been stayed by this court. In the Family Court, the mother did not include information on her latest petition disclosing prior actions between the parties over the same facts and circumstances.

c. On this past Wednesday, when mother was supposed to bring the children to the Family Court at 4:00 p.m. to start a visitation with father, she was an un-explained half hour late.

d. On this past Saturday, she did not bring the boys to meet father at 10:00 a.m. at the designated McDonald's restaurant. Instead she called to say the boys were sleeping, she wasn't going to wake them and claimed that Matthias had diarrhea. Mother showed up at the McDonalds about 11:00 a.m. with the boys. The GAL wrote and gave both parties instructions saying the drop off of the boys on Saturday was to be at the McDonalds at 6:00 p.m. But, at 6:00 p.m., mother was not present to pick up the boys. At about 6:20 - 6:25 p.m. mother was called and reached at her parents' home. Mother claimed the

GAL's instructions required father to drop the children off at mother's home, which father and the visitation supervisor did. This caused the supervisor to miss his own family event.

e. Father will testify that this type of conduct is a repeat of what mother did in Germany. Father feels the mother's conduct is part of her campaign to upset the children, give them a sense of uncertainty and, generally, to keep the children discombobulated. This is just not good for these two children; and this court, as has the German court, is asked to make orders which are in the children's best interests.

2.17 The mother is not able to put the best interests of the children ahead of her own agenda. She has and continues to place the children in the middle of her fight to get money from father, even at the cost of substantially psychologically harming the children.

2.18 Further, the mother has already demonstrated she is a flight risk, even in face of affidavits and representations to a court that she has no intention of going anywhere without the permission of the court or the father. On the other hand, the father has substantial ties to and business interests in the USA and, even if he were thinking about returning the children to

Germany, it would be at an unbearable economic cost to him and to his family's 100+ year old company.

**III. Conclusion.**

3.1 Consequently, based on the above law and facts, this court has the power to order that the children of these parties, Joseph Kufner and Matthias Kufner, be immediately ordered, on a temporary basis, into the physical custody, care and control of the petitioner, Dominik Kufner for the balance of this litigation. Of course, the petitioner will continue to be bound by the order not to remove the children more than 100 miles from the courthouse, without prior permission from the court. And, also, the petitioner represents that he will provide Tina Kufner would have access to the children on a specified and reasonable schedule.

3.2 For the above reasons, the court should grant the requested relief without delay in order to minimize the dramatic harm already suffered by the parties' children at the hands of and because of the action of the respondent.

Respectfully submitted,

March 5, 2007 /s/ Charles A. Tamuleviz

Charles A. Tamuleviz, Esq. Bar No.: 6115
TAMULEVIZ, HULTQUIST, & BIANCHI, LLP
144 Westminster Street
Providence, Rhode Island 02903
401.490.2939
401.490.2940 (fax)

Gerald L. Nissenbaum, MABBO 372400
160 Federal Street, 24th floor
Boston, MA 02110

Bradford Neal Martin, Esq.
(Fed. Bar #3310)
BRADFORD NEAL MARTIN & ASSOC. PA
75 Beattie Place Suite 910
Greenville, South Carolina 29601
864.552.9990
864.552.9992 (fax)

ATTORNEYS FOR PLAINTIFF

CERTIFICATION OF SERVICE

On this 5th day of March 2007, I caused the instant Respondent's Witness List to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Neville J. Bedford, Esquire
321 South Main Street, 5th Floor
Providence, Rhode Island 02903

/s/Charles A. Tamuleviz

Charles A. Tamuleviz, Esquire
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-mail: cat@thbrilaw.com