UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

In re the Application of: Case No. CA 07 046S

DOMINIK KUFNER,
Petitioner,

v.

TINA KUFNER,
Respondent.

**PETITIONER'S FURTHER MOTION THAT HE IMMEDIATELY BE GRANTED SOLE PHYSICAL CUSTODY OF THE CHILDREN and for other relief.**

**I. Relief requested.**

1.1 Petitioner, Dominik Kufner (Husband / Father) moves the Court to order that he immediately be granted sole physical custody of the parties' minor children pending the outcome of this case or pending further orders of the court.

1.2 Husband also moves the Court to establish a visitation schedule for Respondent, Tina Kufner (Wife / Mother) with the children.

1.3 In order to protect the children from further harm inflicted on them by Wife, Husband moves the Court to order Wife to provide a visitation supervisor acceptable to the Court and the GAL who will be present with Wife during all her visitation with the children.

1.4 The visitation supervisor should also be tasked to

immediately end the visitation if Wife discusses any litigation issues with the children or makes other comments or takes action not in the children's absolute best interests.

**II. Brief Background.**

2.1 The parties to this case were and continue to be involved in a highly contested divorce, custody and visitation case in Germany.

2.2 The law of Germany and the March 1, 2006 Order of the Court in Weilheim, Germany (Exhibit 3) provide that parents have custody of their children which they exercise jointly.

2.3 As testimony and full trial exhibits in this case disclose, Respondent (Wife) repeatedly represented to the Weilheim Court that she was not and had no plans to remove the children from Germany without approval of that Court or of the Petitioner, Dominik Kufner (Husband) (Exhibits 67 and 26). Wife did just that on January 25, 2007. Proceedings in this court followed.

2.4 Thereafter, Husband moved before the Weilheim Court that he be granted sole custody of the children (Exhibit 32). On February 7, 2007, Wife filed a long and detailed Opposition to this motion, supported by eleven (11) supporting affidavits (Exhibit 36) claiming she was just visiting the United States and was prohibited from returning , due to your Honor's Order of January 31, 2007. On February 16, 2007, the Weilheim Court ordered that Husband have sole custody of the children and specifically removed all custody from the Wife (Exhibit 73).

2.5 Pursuant to Article 15 of the Hague Convention on the Civil Aspects of International Child Abduction, Husband, as the Applicant before this Court, requested the Weilheim Court to issue an order stating its view and determination regarding the removal of the children. On February 27, 2007, the Weilheim Court issued its order finding that the removal of the children by the Wife was wrongful and in violation of Husband's rights of custody, as that term is defined in the Convention. (Copy attached as Exhibit A).

2.6 On March 5, 2007, pursuant to the UCCJEA which has been adopted by Rhode Island and certain provisions of ICARA, Husband previously moved this Court to accept and enforce the Orders of the Weilheim Court to the effect that he have sole physical custody of the children. Husband incorporates said motion by reference. This Court has yet to hold a hearing or act on that motion.

**III. Recent Events.**

3.1 To avoid duplication, Husband incorporates by reference his Motion for Sole Custody and his Motions for an Issuance of an Order to Show Cause why Wife ought not to be held in Contempt of Court, filed herewith.

3.2 This Court is asked to take steps needed to ensure that the children are safe, not being used as pawns by the mother and residing with a law abiding parent. [FN 1]

---

1. When the children were living at their maternal grandparent' home, the children's living accommodations are not very good; and far from what they enjoyed in German. The

3.2 Wife has and is not complying with court orders.

3.3 Wife is proving to the children that she does not have to comply with Court Orders, all while depriving the children and the Husband of some of their time together.

3.4 After a months-long study quite similar to that which would be conducted in Rhode Island, the German forensic group, GWG, concluded:

a. Wife is not able to put the children's needs ahead of her own; and that Wife cannot understand or accept why the children need or want to be involved with their Father;

b. Father can and will foster respect for Mother in the children; and

---

grandparent's own an 800 square foot house in which the following people reside: (a) the boys' maternal great grandmother who is need of care. (b) their maternal grandmother and grandfather, the latter having various medical issues, such that he was or is still in Hospital due to the stress on him as a result of the Wife living in the house with her two children and being involved in an international kidnapping case. (c) The Wife's sister, who has a congenital illness, called Cri Du Chat, similar to Downs Syndrome, which requires constant vigilance, (d) The Wife's brother, who is unemployed. Three of the five people require care from the grandmother. It is unclear how much care the brother provides.

Adding Wife and the two children to that mix, there are eight people of four generations living in that small home. Wife sleeps in the same bed as her sister. The children are sleeping who knows where. All family members are in extreme distress and passing their fears and other negative emotions on to the children in a very loud and uncontrolled manner.

On Saturday, March 10, 2007, it was learned Wife has now moved out of her parents' home into a motel (checking in under an anonymous name) without notifying either Husband or the GAL. It is unknown what name Wife has registered under, how long she plans to stay there, etc.

c. Custody of the children should be with Father.

3.5 Of course, these are Temporary Orders or reports which are still subject to Wife’s attack at trial in Germany. But that does not mean this Court should ignore this information, nor treat the Orders with less respect than is due them under the UCCJEA.

3.6 Most importantly, this Court’s attention is directed to the harmful impact that Wife’s conduct has and continues to inflict on the children. Among other things, Mother:

a. removed the children from their school in Germany, which was their one safe haven from the swirling dervish of the divorce conflict created there, as here, by mother;

b. took the children from their habitual residence, away from their life-long friends and from their numerous relatives in Germany;

c. intentionally, nefariously, falsely and perjuriously claimed the children could not speak the German language even to their life – long Nanny / housekeeper, Iwona, (who could only speak German and Polish);

d. has tried to destroy the Father’s reputation at the school the boys attended in Germany, as well as at their school in Rhode Island, in the process showing and exploiting naked photographs of the parties’ children to countless people;

e. has terminated her attorney in the middle of court proceedings in an attempt to delay and obfuscate; and

f. once in Rhode Island, Mother claimed she had to leave Germany because of that Court advised it no longer saw a need to have an English speaking psychologist for the children because the children are fluent in Germany. [FN 2].

3.7 The evidence abundantly and floridly discloses that Wife is not credible on any material thing she claims. It may be said it appears that Wife appears unable to tell the truth.

3.8 This case is not about saving Mother from herself. This case is about protecting children from the grave risk of harm. The proof in this case is that the Mother, not the Father, is exposing the children to grave risk of emotional and physical harm.

3.9 This Court has the power and authority to place the boys with the Father, with whom they will be safe.

3.10 Placing the children in Father's physical custody pending the outcome of this case is the safest, best thing to do for these

---

2 . Among other things, Wife claimed she was not able to identify a copy of her premarital agreement, even though it contained her signature in five different places. Mother filed intentionally false complaints under oath with the Rhode Island Family Court on which she failing to disclose that other actions were pending between her and the Father.

In Rhode Island, despite Court Restraining Orders, Wife took the children to the Hasbro Hospital claiming they had been sexually abused by father, though, while here, he was under constant supervision while he had the children on visitation. Wife sought to have the children examined, something that would have occurred but for the diligent work of the GAL.

Mother made demands that father revoke their pre marital agreement in an effort to get more alimony and property. Money is Mother's motivating force here, not the welfare of the children. To get that money, Mother has and will probably say bad things about father from here to eternity despite her knowing Father is no danger to and, in fact, is a very good force in the

children, to protect them from Mother's seeming never-ending onslaught.

**IV. Visitation Supervisor for Mother's Time With Children**

4.1 Mother's conduct demonstrates she will continue to do whatever desperate thing she can think of, despite the harm it will cause the children, to try to keep the children in Rhode Island.

4.2 Mother repeated placed the children in the middle of her efforts to get money from Father. [FN 3].

4.3 It is time to do something to protect the children from their Mother by requiring her to take responsibility for her actions and by having a visitation supervisor acceptable to the GAL.

4.4 It is submitted that the supervisor should be given power to end any visitation if Mother violates Court Orders regarding the children, if Mother talks about any part of the on-going case with the children or tries to brainwash them or otherwise acts in a way that the supervisor reasonably, in his or her sole discretion, deems not to be in the children's best interest.

**V. Conclusion.**

4.1 Based upon the above and the referenced motions, incorporated by reference, the Court is asked to grant the relief

---

children's lives.

3. One of many incidents included her dragging the children to their father's office, and among other things, forcing young Joseph to demand money from his father, all while Mother admitted she had 40000 Euro (about US $50,000) she had taken from the

requested and such other and further relief as it deems meet and just.

Respectfully submitted,

March 12, 2007

Charles A. Tamuleviz, Esq. (Fed. Bar #6115)
TAMULEVIZ, HULTQUIST, & DIANCHI
144 Westminster Street
Providence, Rhode Island 02903
401.490.2939
401.490.2940 (fax)

/s/ Bradford N. Martin
Bradford N. Martin (Federal Bar #3310)
BRADFORD NEAL MARTIN & ASSOCIATES, PA
75 Beattie Place, Ste. 910
Post Office Box 10410
Greenville, South Carolina 29603
864.552.9990
864.552.9992 (fax)

Gerald Nissenbaum, Esq.
NISSENBAUM LAW OFFICES
The Landmark
160 Federal Street, 24th Floor
Boston, Massachusetts 02110
Phone: 617-330-9090
Fax: 617-330-6909

ATTORNEYS FOR PETITIONER

children's trust account.