UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

In re the Application of: Case No. CA 07 046S

DOMINIK KUFNER,
Petitioner,

v.

TINA KUFNER,
Respondent.

**AFFIDAVIT AND UNDERTAKING OF DOMINIK KUFNER.**

Now comes Dominik Kufner and hereby deposes, states and undertakes as follows:

1. I am the petitioner in the above entitled action.

2. I am the Father of Joseph and Matthias Kufner. I have been involved in the healthcare of both children throughout their lives and remain actively involved to this day.

3. Matthias has had a history of some ear infections. Respondent, Tina Kufner (Wife or Mother), and I have had differing opinions as to the nature and severity of Matthias' ear problems.

4. In Germany, I had Matthias treated by Prof. Dr. Berghaus, Head of the Department of Otolaryngoloty at Munich University Hospital. Dr. Berghaus is a leading ENT specialist in Germany. The last time I took Matthias to Dr. Berghaus was January 15, 2007. As a result of that appointment, Dr. Berghaus recommended Matthias have annual follow up appointments or be seen again if symptoms come back. Dr. Berghaus did not feel the need for Matthias to undergo immediate surgery at that time. (See translation of Dr. Berghaus report attached hereto as Exhibit 1.)

5. Upon my Wife kidnapping our children from Germany to Rhode Island, she sought treatment for Matthias with Dr. Donald Keamy at the Massachusetts Eye & Ear Infirmary.

6. I attended the initial consultation with Dr. Keamy with my Wife, Matthias and my Wife's father whom she insisted be present as a witness. Although I asked Dr. Keamy for separate appointments for Matthias' evaluation and the discussion about his condition and recommended treatment, my request was not granted. I had hoped to avoid disagreeing with my Wife in front

of Matthias but such became unavoidable.

7. Dr. Keamy asked about Matthias' medical history. My Wife reported that Matthias (1) had 8 ear infections in the year 2006; (2) snores strongly at night; (3) has breathing lapses while sleeping; and (4) has hearing impairments. I could not sit back and let Dr. Keamy make medical recommendations on what I believe to be a false representation of Matthias' medical history. So, I spoke up and told Dr. Keamy of my observations of Matthias' medical history, including the fact that I have cared for Matthias 6 of every 14 days and half of all vacation months for the last two months and, prior to that, 4 of every 14 days. Also, I had accompanied Matthias to his pediatrician, Dr. Felkel, 20 times in the last 15 months for various check ups and other matters.

8. I reported to Dr. Keamy my observations of Matthias are that he has had one ear infection in 2005 and one in 2006. I have never heard Matthias snore at night and I do frequently check on Matthias and Joseph when they are sleeping. I have also did not observe Matthias to have any breathing problems while sleeping.

9. I told Dr. Keamy that I have taken Matthias to Prof. Dr. Berghaus, who is recognized as one of Germany's three most qualified experts in children's ear nose and throat matters. The first appointment was June, 2006 at which time Dr. Berghaus did not recommend surgery but, rather a follow up appointment six months later. The second appointment was January 15, 2007 at which time Dr. Berghaus, again, did not recommend surgery.

10. I also told Dr. Keamy about the dispute between my Wife and I over the children's custody and informed him of the international kidnapping case which is pending in the Federal Court in Rhode Island. I told him it was my opinion that my Wife is trying to build a case of medical neglect against me.

11. At that point, Dr. Keamy suggested Matthias go to the waiting room with his grandfather. But, my Wife would not permit her father to leave the room - insisting she needed him present as a "witness". So, Matthias was forced to remain in the room while listening to his parents make such statements.

12. Dr. Keamy stated that he needed independent medical data before making a conclusion as to what, if any, medical attention Matthias needs. He recommended a hearing test.

13. The hearing test was performed on Matthias that day at Dr. Keamy's office. We sat in the waiting room for about 45 minutes before a second meeting with Dr. Keamy - post hearing test. Dr.

Keamy stated that Matthias' hearing is perfect. Dr. Keamy then recommended a "sleep test" which he said would take more than a month to get scheduled.

14. My Wife objected to the time frame for the sleep test stating that Matthias was in danger and could not wait that long. Dr. Keamy assured us that Matthias was NOT in any danger. Dr. Keamy opined that Matthias has been in this condition for 7 years and it is now more important to avoid a potentially unnecessary surgical procedure than it is to make a quick and rash decision. Dr. Keamy then discussed the risks of a surgical procedure including the risk of uncontrolled bleeding accompanied by the removal of tonsils and/or adenoids. I asked Dr. Keamy about the risks to Matthias during the fact finding period. He responded that the risks were negligible.

15. Dr. Keamy stated that he would dictate his report and send two copies to my Wife's address and my Wife agreed to provide me with a copy. I did not receive a copy of Dr. Keamy's report.

16. Matthias had a sleep test performed at Tufts New England Medical Center beginning of March, 2007. Because the test was performed in the USA, it was not covered by our German health insurance. Accordingly, I paid more than $3,700 for the test, plus there will be additional bills for the technician and, of course, for Dr. Keamy.

17. On March 19, 2007, I had a telephone conversation with Dr. Keamy to discuss the result of Matthias' sleep test. In that conversation, Dr. Keamy stated that Matthias was diagnosed with a mild to moderate sleep apnoea - indicating that he snored a bit. Under these circumstances, Dr. Keamy recommended to me that Matthias undergo surgery. I asked Dr. Keamy about the timing. Dr. Keamy clearly confirmed that this operation is not a matter of urgency. Dr. Keamy stated Matthias was already "ahead of the game" by getting the sleep test so fast. Dr. Keamy stated that he would not be able to operate on Matthias for several weeks.

18. If Matthias is operated on in the USA, my Wife and I will be responsible for full payment of the medical bills because our German health insurance will not cover the operation in the USA unless we can prove there was an emergency at which point some part might be reimbursed. Several weeks have passed since the time Dr. Keamy first saw Matthias without Dr. Keamy calling to say it was urgent that surgery be performed on Matthias. Therefore, it is highly unlikely I can prove any surgery in the USA to be an emergency.

19. If Matthias is operated on at home in Germany, the operation will be covered in full. Not only do we have the regular German healthcare coverage, I also pay more than $1,200 per month to fully insure the children and myself for all health care treatment. This means there are no deductibles for anything. All pre-operative care, operations, post-operative care, medications, and so on are all fully covered under our German health insurance.

20. I have never been against Matthias undergoing surgery if such was needed. I just do not want him to undergo unnecessary surgery. Now I have Dr. Keamy's verbal report of the sleep test result plus his recommendation that surgery be performed. Dr. Keamy also told me instead of using a surgical knife, that consideration of the use of "laser" surgery is appropriate to reduce, rather than remove Matthias' tonsils and adnoids. I have made an appointment for Matthias to see Dr. Berghaus at 1:30 PM on April 5, 2007. Based on the information conveyed to Dr. Berghaus regarding Matthias' medical appointments and sleep test in the USA, we are also in the process of trying to schedule a surgery date for Matthias a day or two after the April 5th consultation.

21. The key to a swift surgery in Germany will be my having a copy of the sleep test performed at the Tufts New England Medical Center so that another test need not be performed in Germany. I am making every effort to obtain a copy of the sleep test and as soon as I am able to obtain a copy - I will transmit a copy to Dr. Berghaus.

22. I believe my Wife's claim of a need for such surgery is not a proper Article 13(b) defense, particularly where she offered no proof she ever raised this issue to a German court and failed to prove that Germany would not protect Matthias. Even so, I hereby undertake to bring Matthias to the appointment with Dr. Berghaus on April 5, 2007 at 1:30 PM and to follow up and ensure Matthias receives the surgery I now believe is necessary.

23. I expect Matthias to have the surgery during the Easter holidays in Germany and recover at his home, in his familiar surroundings with family and friends around. Assuming no complications with the surgery, I fully expect Matthias to return to his school in Germany following the Easter holiday.

Signed under the pains and penalties of perjury this 26th day of March, 2007.

Dominik Kufner

CERTIFICATION OF SERVICE

On this 26th day of March 2007, I caused the forgoing, Petitioner's Affidavit and Undertaking to be filed electronically and it is available for viewing and downloading from the ECF system.

By Electronic Notification to:

Richard A. Boren, Esq.
Visconti & Boren Limited
Providence Square Building
55 Dorrance Street
Providence, RI 02903
rab@viscontilaw.com

/s/ Gerald L. Nissenbaum

Gerald L. Nissenbaum, Esq.
(MA BBO# 372400)
NISSENBAUM LAW OFFICES
160 Federal St., 24th Fl.
Boston, MA 02110
617.330.9090
617.330.6909 (fax)
E-mail: jerry@nissenbaumlaw.com