February 19, 2007

# AFFIDAVIT

OF WOLFGANG VOMBERG
ATTORNEY AT LAW (GERMANY)
CASE: Kufner v. Kufner
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

I state in lieu of an oath, that this affidavit was written by me to the best of my knowledge. I am fully aware, that a false statement is punishable by law.

1. I, Wolfgang Vomberg, born Oct. 23, 1947, reside at Kurhessenstraße 90, D-60431 Frankfurt am Main/Germany

2. I am a German Attorney-at-Law and Notary, furthermore Certified Family Law Specialist. My activities and qualification are described in the attached firm profile. (Exh.A) I have published a book about the legal issues concerning international child abduction (Exh. B)

3. I am a Matrimonial Lawyer and have been retained as an expert by Mr. Dominik Kufner in order to express my legal opinion about (1) the application of the Hague Convention on Child Abduction in general here in germany, (2) the quality of the Court's procedure at the Family Court in Weilheim concerning the custody and access case (File numbers: 2 F 139/06 and 2 F 552/06), (3) the degree, how German Courts protect children in cases of assumed sexual abuse/pedophilia. The statistics of the german Central Authority (Bundesjustizamt) give evidence about the correct and responsible application of the Convention (see Exh. C)

4. I have been given an reviewed the copies of the Court's files an I have examined their contents.

   The results are as follows:

   (1) In the meantime the German Justice has big experience with international abduction cases and the specific Hague Convention. The Supreme Federal Constitutional Court (Bundesverfassungsgericht) has ruled, that in general children,

who have been abducted, have to be returned promptly to their home state Only in very rare cases the petition for return can be denied. The Family Judges at the local courts and the Appeal Jugdes have been trained by the Ministry of Justice. They are aware that child abduction causes traumata to the children and that immediate return is needed.

Since 1989 I have handled more than 200 child abduction cases and my success rate is more than 90 percent as far as the return of the children is concerned. In general I have represented the non-abducting parent. In my opinion Germany has made a very big progress in the application of the Convention, especially with regard to the United States.

(2) The files concerning custody and access are extremly voluminous. This results from the fact, that we have a contested case and that the spouse did not accept to the issues of custody and access, although this situation is totally comparable to the American situation Her multiple changes of lawyers demonstrate that she is not willing to recognize the needs of the children an the German Legal Procedures and Rules. Many times the spouse did not comply with the Court's orders and proposals Her cooperation in the proces of expertise (by the psychologist of the GWG) was missed. The Youth Welfave Office and the expert state that there is no concrete indication of sexual abuse or pedophilia, so that the contact between father and children had to be secured.

The Family Judge and the involved Youth Welfare Office as well as the expert followed the objective that in custody cases **ex officio** it has to be cleared, what is in the best interest of the children The Court came to the intermediate conclusion that the allegations of the spouse have no real background In consequence the Family Judge did not see any reason to deviate from the general rule, whereas both parents, who are married, have joint custody under Geman Family Law (Art 1626 of the German Civil Code- BGB) (Exh. D) The Court has made extraordinary efforts to explore the status of facts and to take the appropriate measures in order to secure the children's wellbeing due to § 1661 a BGB. This belongs to the role of the Court as guardian of the child's own basic rights (Supreme Federal Constitutional Court). The German Court did a full and proper investigation. The provisions of the German Family Law and the German Procedure Law have been correctly applied.

(3) German Family Courts and their Jugdes are well experienced with the handling of cases, where the allegation of sexual abuse ist raised. In the past many articles concerning this problem and its solution have been published. The Judges know how to judge such allegations and which measures are to be taken or not.

The photos of the children are in my opinion not pornographic. They only show normal conduct of the children at this age. In my opinion there is not concrete indication to a misbehavior of the father. The photos express great fun of the children without any ulterior motive.

(4) If needed I can give further details of the German Legal situation, the concrete procedure, and explain the exhibits while being present at Court. My opinion has not been influenced by Mr. Kufner. This opinion ist based on my extensive experience with custody cases in the past here in Germany.

Wolfgang Vomberg
Rechtsanwalt
Fachanwalt für Familienrecht
Frankfurt am Main

A

**Wolfgang Vomberg**

Kurhessenstraße 90
60431 Frankfurt am Main, Germany
Telephone: +49-69-9521870
Telefax: +49-69-95218725
E-mail: info@vomberg-ra-notar de

*General Practice, Litigation, Wills, Succession, National and International Matrimonial Law, Notary's Office.*

***FIRM PROFILE:***

*The firm was established in 1988 and provides qualified legal services on a personal basis including those of a notary public. Specialisation in National and International Matrimonial Law since 1976. The client base is European and North American in scope.*

***MEMBER OF FIRM:***

***Wolfgang Vomberg**, born Duisburg, Germany, October 23, 1947; admitted to Frankfurt Bar 1976, Notary appointed 1990, Certified Family Law Specialist. Education : University of Frankfurt. Member: German Bar Association, German Lawyers' Association (Deutscher Anwaltsverein) – Committee for Family and Inheritance Law; Fellow and Past Governor of the International Academy of Matrimonial Lawyers (IAML); Observer for the IAML at the Hague Conference on Private International Law; Lecturer at the German Lawyers Academy (Deutsche Anwaltakademie) as trainer for future Certified Family Law Specialists; Lecturer for German Family Judges at the German Judges' Academy (Deutsche Richterakademie) and the Family Judges of the State Hessen; Lecturer at the Frankfurt Attorneys' and Notaries' Bar; Deutscher Familiengerichtstag e.V.; Author and Co-author of numerous articles concerning National and International Family Law and Conventions.*

***Languages:** German, English and French.*

***Practice Areas:** National and International Matrimonial Law; Child Abduction Law.*

B

Vomberg/Nehls

# Rechtsfragen der internationalen Kindesentführung

(Legal Issues of International Child abduction)



C.H.Beck
Familienrecht

D



## Titel 5.[1), 2), 3)] Elterliche Sorge

Translation

**§ 1626.**[4)] **Elterliche Sorge, Grundsätze.** (1) [1]Die Eltern haben die Pflicht und das Recht, für das minderjährige Kind zu sorgen (elterliche Sorge). [2]Die elterliche Sorge umfaßt die Sorge für die Person des Kindes (Personensorge) und das Vermögen des Kindes (Vermögenssorge).

Parental care (elterliche Sorge) – meaning all the duties and rights of a parent to his/her child – is attributed to both parents alike. It excludes personal care and care for the child's property.

(2) [1]Bei der Pflege und Erziehung berücksichtigen die Eltern die wachsende Fähigkeit und das wachsende Bedürfnis des Kindes zu selbständigem verantwortungsbewußtem Handeln. [2]Sie besprechen mit dem Kind, soweit es nach dessen Entwicklungsstand angezeigt ist, Fragen der elterlichen Sorge und streben Einvernehmen an.

(3) [1]Zum Wohl des Kindes gehört in der Regel der Umgang mit beiden Elternteilen. [2]Gleiches gilt für den Umgang mit anderen Personen, zu denen das Kind Bindungen besitzt, wenn ihre Aufrechterhaltung für seine Entwicklung förderlich ist.

**§ 1626 a.**[5)] **Elterliche Sorge nicht miteinander verheirateter Eltern; Sorgeerklärungen.** (1) Sind die Eltern bei der Geburt des Kindes nicht miteinander verheiratet, so steht ihnen die elterliche Sorge dann gemeinsam zu, wenn sie

1. erklären, daß sie die Sorge gemeinsam übernehmen wollen (Sorgeerklärungen), oder
2. einander heiraten.

(2) Im übrigen hat die Mutter die elterliche Sorge.

**§ 1626 b.**[5)] **Besondere Wirksamkeitsvoraussetzungen der Sorgeerklärung.** (1) Eine Sorgeerklärung unter einer Bedingung oder einer Zeitbestimmung ist unwirksam.

(2) Die Sorgeerklärung kann schon vor der Geburt des Kindes abgegeben werden.

(3) Eine Sorgeerklärung ist unwirksam, soweit eine gerichtliche Entscheidung über die elterliche Sorge nach den §§ 1671, 1672 getroffen oder eine solche Entscheidung nach § 1696 Abs. 1 geändert wurde.

**§ 1626 c.**[5)] **Persönliche Abgabe; beschränkt geschäftsfähiger Elternteil.** (1) Die Eltern können die Sorgeerklärungen nur selbst abgeben.

(2) [1]Die Sorgeerklärung eines beschränkt geschäftsfähigen Elternteils bedarf der Zustimmung seines gesetzlichen Vertreters. [2]Die Zustimmung kann nur von diesem selbst abgegeben werden; § 1626 b Abs. 1 und 2 gilt entsprechend. [3]Das Familiengericht hat die Zustimmung auf Antrag des beschränkt geschäftsfähigen Elternteils zu ersetzen, wenn die Sorgeerklärung dem Wohl dieses Elternteils nicht widerspricht.

---

[1)] Überschr. Fünfter Titel neugef., § 1626 a eingef. durch KindRG v. 16. 12. 1997 (BGBl. I S. 2942), Abs. 1 Nr. 2 geänd. durch EheschlRG v. 4. 5. 1998 (BGBl. I S. 833).

[2)] Wegen des für das Gebiet der ehem. DDR geltenden Übergangsrechts zu §§ 1626 bis 1698 b beachte Art. 234 § 11 EGBGB; Nr. 21.

[3)] Beachte auch Gesetz über die religiöse Kindererziehung v. 15. 7. 1921 (RGBl. S. 939); abgedruckt in **Beck'sche Textausgaben „BGB"**.

[4)] § 1626 neugef. durch G v. 18. 7. 1979 (BGBl. I S. 1061), Abs. 1 Satz 1 geänd., Abs. 3 angef. durch KindRG v. 16. 12. 1997 (BGBl. I S. 2942)

[5)] §§ 1626 b, 1626 c eingef. durch KindRG v. 16. 12. 1997 (BGBl. I S. 2942)

GERMAN LAW ACCESSIBLE

# Family & Succession Law in Germany

Peter Gottwald
Dieter Schwab
Eva Büttner

C. H. Beck

able and final so as to
al circumstances men-
lows for a revocation.
: not validly given[1] or
ccurred.[2]
the adoption order has
that time there is a ban
welfare and the Court
II BGB.

746

troactive effect, §1764
ble the family ties pre-
e then severed revive,
regain parental care,
contrary to the child's

Explanations
(extract)



# Chapter 6. Parental Care

## §1. Acquiring Parental Care

*172.* As a rule, parental care ('elterliche Sorge') – meaning all the duties and rights of a parent in relation to his/her child – is attributed to both parents alike. Under certain conditions German law also knows sole parental care. Even then the tie between the other parent and the child is not completely severed, though, and some rights and duties (e.g. duty to maintain, right to contact) remain. Parental care may be acquired in a threefold way: automatically by law, by declaration and by Court order.

### I. Parental Care Acquired by Law

*173.* Where the parents are married at the birth of the child, both acquire parental care automatically without any further act being required or even possible.[1] Parental care thus acquired continues until ended by law (e.g. at the death of the parent) or by Court order. The parents' divorce or separation thus remains without influence on the continuing parental care for the child. Where the parents are not (yet) married at the time of the child's birth – and have not given a declaration of joint parental care –, only the mother has parental care, §1626a BGB. Subsequent marriage of the parents will lead to automatic joint parental care though – comparable to the idea of legitimization by subsequent marriage under the old law.

1 *Cf.* §1626a BGB

### II. Parental Care Acquired by Formal Declaration

*174.* Where the parents are not married to each other at the time of the child's birth joint parental care can also result form a formal declaration. This declaration is only effective if made in the prescribed form: It has to be given by both partners personally and unconditionally (§1626b I BGB) and it has to be officially recorded.[1] It is not possible to limit the extent to which one or both of the partners will exercise parental care.

The declaration becomes legally effective only when validly made by both parents and after the child has actually been born – even though it is possible to lodge a declaration prior to the birth, §1626b II BGB. There is no time-limit as to when the declaration has to be made other than the child's coming of age. Where parental care over a child has already been determined by a Court order, there is no room for any declarations of parental care, §1626b III BGB.

As long as the requirements as spelled out in §§1626a–d BGB are adhered to, the declaration will be valid. Even a violation of general rules – e.g. in the case of fraudulent misrepresentation – will not render the declarations invalid.

1 §§1626d I BGB, 59 I 1 No. 8 SGB VIII

*175.* The parents' declarations do not have to be given together or simultaneously. They do not form a contract but run parallel to each other, leading to the curious result that the father lodging his declaration might not even know that the child's mother has already done so. Further, it is not necessary that the parents cohabit. In the case of non-cohabitation, joint parental care will be exercised by granting the resident parent the sole right to decide on daily affairs, §1687 I 2,3. BGB.[1]

1. *See infra* No. 183

*176.* At no point in the proceedings is there any inquiry into the child's welfare. But once a declaration of joint parental care has come into effect, the parents' disposition ends: any change as to parental care can now only be brought about by the court order, e.g. under §1666 BGB, if the child's welfare is seriously endangered or on application by one of the parents.

## III. Parental Care Acquired by Court Order

*177.* A parent may only apply for a parental care order when the family situation has altered significantly, e.g. upon the parent's separation, §§1671, 1672 BGB,[1] or where an order granted previously is asked to be changed. When deciding upon making the order, the child's welfare is the first consideration, §1697a BGB.

1 *Cf.* §§1678 II, 1680 II, III; 1681 II BGB.

## §2. Personal Care (§§1626 I 1, 1631 BGB)

*178.* Parental care for a child is exercised in two main areas: in the personal and financial sphere. German law thus distinguishes between personal and financial care as the duties of a parent. Personal care grants the parents' rights and duties in relation to the child and to third parties. Its main objective is the furthering of the child's interest and welfare. In the area of personal care – as well as with financial care – the right to legally represent the child (§1629 BGB) plays a key-role.

Parents further have a right to determine the child's residence (§1631 BGB) and a right to physical possession enforceable against anyone who detains the child against the parents' demands (§1632 I BGB). The parents also possess the right to control and direct contact made with the child (§1632 II BGB). §1626 II BGB points out, though, that when providing care and upbringing the parents shall take into account the growing ability of the child and his need to act independently and with a sense of responsibility. Parents shall therefore discuss questions of parental care with the child to the extent that his development indicates and they shall endeavour to act in agreement.

20/02/2007 12:12 +49-69-95218725 RA VOMBERG S. 25/31
Case 1:07-cv-00046-S-LDA Document 93-23 Filed 04/11/2007 Page 10 of 16



are adhered to, the
g. in the case of
alid.

or simultaneously
ing to the curious
w that the child's
parents cohabit. In
d by granting the
3, BGB.[1]

ne child's welfare.
, th[illegible]ents' dis-
ught about by the
sly endangered or

e family situation
I, 1672 BGB,[1] or
en deciding upon
97a BGB.

the personal and
nal and financial
ghts[illegible] duties in
furthering of the
as with financial
key-role.
§1631 BGB) and
detains the child
ssess the right to
§1626 II BGB
parents shall take
dependently and
tions of parental
and they shall



*179.* Where a child is or has been married the personal care is limited to legal representation (§1633 BGB), whereas financial care continues undiminished.

## §3 THE WELFARE PRINCIPLE

*180* The guiding principle for a parent exercising parental care shall be the child's welfare. The Basic Law ascribes the right to direct the child's upbringing to the parents;[1] it is thus not primarily for the state to determine how this welfare is best achieved in practice. The state is under an obligation to intervene, though, where the child is suffering or is likely to suffer significant harm.

The law still aims to provide some guidelines as to the meaning of the welfare principle: §1626 II BGB reminds parents to take into account the child's increasing capacity to arrive at decisions of his own and to consult with the child accordingly. This applies especially where the child's education is concerned: §1631a BGB. §1631 II BGB prohibits humiliating treatment of the child. The law especially mentions corporal and spiritual maltreatment, but does not to date generally outlaw corporal punishment of any kind, though this was debated in the legislative process.

1 Art. 6 II 2 GG.

## §4 LEGAL REPRESENTATION

*181* Parents may exercise legal representation for the child in a twofold way: by acting for the child and by consenting to the child's own acts. The child may also be covered by contracts between its parents and third parties by way of the contracts with protective effects *vis-a-vis* third parties.[1]

Legal representation of the child is exercised either jointly by the parents (§1629 I 2 BGB) or by one parent alone (§1629 I 3 BGB), depending on who has parental care for the child.

1 The so-called Vertrag mit Schutzwirkung zugunsten Dritter

### I. Joint Parental Care

*182* Where the parents share joint parental care, both parents have to act for the child, though representation may be arranged between the parents. If the parents cannot agree the Family Law Court may transfer the right to decide to one of the parents and thus in so far grant sole legal representation (§1628 BGB). Where they cannot agree, the Court may also grant one parent the sole right to decide in a certain field, e.g. where medical treatment is concerned. Furthermore, a parent may always decide alone in the case of imminent danger, provided the other parent is then informed without delay (§1629 I 4 BGB).

*183.* Upon the parents' separation, the right to decide on daily matters remains solely with the resident parent (§1687 I 1–3 BGB).

Case 1:07-cv-00046-S-LDA Document 93-23 Filed 04/11/2007 Page 11 of 16



## II. Limits of Legal Representation

*184.* German law knows several other instances in which the parent's right to legal representation is curtailed in order to protect the child's interest or to give credit to his growing capacity to arrive at his own conclusions. Here it shall suffice just to highlight some examples:

a) Transactions which seem likely to jeopardize the child's interests will additionally need the consent of the Family Law Court,[1] e.g. the disposal of the child's property (§1821 I No. 1 BGB), of all his assets at once (§1822 No. 1 BGB), when debts are incurred in the child's name (§1822 No 8 BGB) or the disclaimer of an estate. Here, the Family Law Court decides according to the welfare principle whether or not to grant the parents permission to undergo the transaction in question. (§1697a BGB). But whether or not the parents eventually act on that permission is at their discretion.
b) The law denies the parents the power to decide for the child altogether where a conflict of interests between the child and the parents seems likely, e g. in the case of legal transactions between the child and one or both of the parents or a close relative (§§ 181, 1795 II, 1795 No. 1 BGB). These restrictions do not apply though, where the transaction as of right might only be beneficial for the child.[2] Should the parents still act for their child, contrary to the prohibitions afore mentioned, they act without power of representation (§§177*sqq.* BGB). Their actions might be sanctioned by the child once it has come of age. Also, the Court may subsequently grant its permission.
c) The Federal Constitutional Court has further decided that these restrictions may not suffice to protect the interest of the child: Parents may thus not enter into obligations which will burden the child with debts to an extent where the aim of enabling the child to lead a self-determined life at reaching majority would be put in danger.[3] Accordingly, the *Act Limiting the Liability of Minors*[4] introduced §1629a BGB, which now limits the child's liability for engagements the parents made for the child (§1629a BGB).

1 *See* §§1643 I, II; 1821f.; 112 BGB.
2. BGHZ 59, 236; BGH FamRZ 1975, 480
3. BVerfGE 72, 155
4 'Gesetz zur Beschränkung der Haftung Minderjähriger' of 1 January 1999.

## §5 Disagreement between Holders of Parental Care

*185.* Where parental care is exercised by both parents, decisions shall be taken jointly and to the welfare of the child, §1627 S. 1, 2 BGB. Disagreements which cannot be resolved by the parents themselves may ultimately be taken before the Family Law Court, §1628 BGB. At the application of at least one of the parents the Court will issue an order if the matter is of considerable importance and a decision is in the interest of the child, 1697a BGB. In granting the order, the Court will transfer the right to one of the parents according to the welfare principle as shown *supra*.[1]

1. *Cf. supra* No 180.

*186.* §1628 BGB grants the Court the power to transfer the right to decide all future questions arising in a specific area to one of the parents. As an exception to the idea of joint parental care this should only be granted in special circumstances

§6. Self-determination of the Child

*187.* As the child matures, the scope of parental care diminishes, §1626 II BGB.[1] This recognition of the child's growing maturity is expressed in a number of provisions in the Code:

a) From the age of fourteen the child alone will decide the question of his religious denomination, §5 *Religious Upbringing of Minors Act* [2]
b) From the age of sixteen onwards the minor can draw up a Will (2247 IV BGB) without the parent's consent being necessary, §2229 II BGB.
c) Consent to medical treatment will depend on the understanding of the child.[3] The conditions under which the child's consent alone will suffice to allow for medical treatment, e.g. an abortion, are still a matter of controversy
d) The child also enjoys increased procedural rights as he grows older: A minor above the age of fourteen always has to be heard in proceedings relating to his personal care.[4] Younger children will be heard if the Court deems this to be necessary.
e) Also from the age of fourteen onwards the child is entitled to an appeal to a higher court[5] where e.g. a parental care order (§1671 BGB) or a contact order (§1671 BGB) is concerned.

1. *See supra* No 178
2. 'Gesetz über die religiöse Kindererziehung'.
3. 'Natürliche Einsichtsfähigkeit', BGHZ 29, 33
4. §50b FGG
5. *See* §59 I 1 III FGG.

§7. Protection for Parental Care

*188* Parental care may need to be protected from undue influences of third parties. The state guarantees the undisturbed exercise of parental care by way of granting the parents certain rights against third parties in §1632 BGB. Parental care is also recognized to be a right protected under the law of torts, §823 I BGB.

## I. Possession of the Child

*189* According to §1632 BGB the holder of parental care may thus request the return of the child to him of any third party provided this does not run counter to the child's welfare. The right may be exercized against the other parent as well where parental care lies solely with the requesting parent.

Case 1:07-cv-00046-S-LDA Document 93-23 Filed 04/11/2007 Page 13 of 16



## II. Contact

*190.* Parents furthermore have the right to determine who is to contact the child. If necessary, they may apply for a Court order to defend that right whether it is a third party or the child himself who seeks the undesired contact. Where the child is approaching majority this might be problematic in view of the child's growing maturity and right to self-determination, §1626 II BGB.

The Courts here will cautiously weigh the interests at stake and will only on plausible grounds go against the child's express wishes. Courts will be especially careful where a positive relationship has been established even if this happened against the parents' wishes. It should be noted, though, that §1632 II BGB is not applicable where contact between the child and the non-residential parent is concerned.[1]

1 *Cf. infra* No. 217*sqq.*

## §8 Third Parties Caring for Children

*191.* As a rule, parental care is strictly personal and cannot be transferred as a whole to a third party. Parents can only invest others temporarily with certain rights in relation to the child, as e.g. in the case of neighbours caring for the children.

*192.* The situation is different where the parents are not willing or able to undertake the child's upbringing, but also do not want to free the child for adoption. Foster carers may then be asked to take on the factual role as a parent,[1] while parental care remains vested in the parents. §1688 BGB tries to balance the potentially conflicting interests between parents and foster carers. The Court can thus temporarily transfer certain rights to the foster carers, especially relating to daily affairs, §§1688 I 1, 2, 3; 1629 BGB, though not against the parents express wishes, §1688 III 1 BGB.

1. So-called Familienpflege, *cf.* §33 SGB VIII for the financial side of this.

*193.* Should the parents request the child's return to the detriment of the child's welfare, the Family Law Court may order the child to remain with the foster family, §1632 IV BGB. As this poses a severe curtailment of the constitutionally guaranteed parental right, the child's welfare has to be seriously endangered for the Court to make such an order.

With the parents consent the Family Law Court may further transfer rights to the foster carers to the exclusion of the parents under §1630 II BGB.

## §9. Care for the Child's Property

*194.* On the financial side, the parents' care shall chiefly aim at the conservation and augmentation of the child's assets. With the exception of the assets named in §1638 BGB, these include everything the child owns and acquires, including anything purchased by the parents with the child's means.[1]

In governing the assets, the parents are bound by the ideas of economic property management, §1642 BGB. Should this be endangered the Family Law Court may intervene, §1667 II BGB. Transactions which are typically potentially dangerous to the integrity of the child's fortune also require the Court's prior consent, §1643 BGB, as the parents' power to represent the child in so far is restricted.[2]

1 Principle of 'surrogation', §1646 BGB.
2 *See supra* No. 184.

*195.* The Code also outlines how the child's assets shall be used: Income is to be used primarily to cover the cost of administering the property and the cost of maintaining the child, §1649 BGB. The original capital shall only be touched if otherwise the child's maintenance would be jeopardized. Any remaining income shall be invested anew. §1649 II 1 BGB allows for a limited use of surplus income for the maintenance of the parents or of any minor unmarried siblings,[1] based on the idea of family solidarity.

1. Notwithstanding the rules found in §1602 I BGB.

## §10 Claims between Parents and Children Arising from the Exercise of Parental Care

*196.* If the parents incur expenses in the exercise of parental care which they are entitled to consider necessary in the circumstances, they may demand compensation from the child to the extent that they themselves are not chargeable for such expenses (§1648 BGB). Upon the termination of the care the parents have to release the child's property and on demand also have to render an account of its administration (§1698 I BGB).

*197.* As a rule, parents may also be held liable for a breach of their parental duties. §1664 BGB sets out that parents exercising parental authority shall be responsible only for such care as they customarily apply to their own affairs. But the relation of §1664 BGB to the general rules of tort add thus the exact extent of the parents' liability is a matter of considerable dispute.[1]

1. *Cf.* e.g. BGH FamRZ 1988, 267.

## §11. State Support

*198.* Parents who for whatever reason encounter difficulties in caring adequately for their children are entitled to rely on the state for assistance and support. This will chiefly be provided by the Family Law Court in the form of orders and also by the local authorities, acting through the local Youth Welfare Office ('Jugendamt'). The Courts may assist by way of admonitions or warnings to the child or by granting orders, e.g. transferring the child to an educational institution of the parents' choice.

Any Court orders will take into account the welfare of the child. On application by the parents, the local Youth Welfare Office will provide 'assistance' ('Beistandschaft') under a special new legal framework as spelled out in §§1712–1717 BGB. They will support holders of parental care in proceedings concerning filiation (§1712 I No. 1 BGB) and maintenance claims (§1712 I No. 2 BGB). Rights arising from parental care are not curtailed by this assistance.

*199.* On a non-judicial side, the local Youth Welfare Office and the 'Kinder- und Jugendhilfe' will provide help in further areas relating to the upbringing and welfare of children if so requested by the parents.

## §12 State Control

*200.* The Basic Law grants the parents the fundamental right to determine the upbringing of their offspring as they think fit.[1] The state nevertheless has to fulfil its role as guardian of the child's own basic rights[2] and may therefore be authorized to curtail parental rights in order to protect children whose carers abuse them or are unable or unwilling to look after them. §1666 BGB enables the Family Law Court to intervene in cases where the welfare of the child or of his assets are endangered.

1. Art. 6 II GG.
2. Idea of the 'staatliches Wächteramt'.

### I. Personal Welfare

*201.* The Courts may act to protect children from dangers to their physical, mental or spiritual welfare. To allow for an order under §1666 this danger must result from either:

- abuse of parental care;
- neglect of the child;
- inadvertent behaviour of the holder of parental care; or
- the actions of third parties,

and the parents must be unwilling or unable to avert the danger themselves.

*202.* The Code does not specify which orders the Court may grant in reaction to such circumstances. The judge enjoys discretion to make the appropriate orders to keep the child from harm. These may range from placing the child under institutional or foster care to ultimately withdraw parental care altogether from the parents. The Court may also substitute the parent's consent where necessary, e.g. to medical treatment of the child.

Only such orders may be made which follow the principle of reasonableness and which are proportionate to the impending danger, as is pointed out in §§1666a I, II BGB. Orders may be altered by the Court at any time (§1696 BGB) and the Court

Case 1:07-cv-00046-S-LDA Document 93-23 Filed 04/11/2007 Page 16 of 16

rental Care
application
ınce' ('Bei-
§1712–1717
ıing filiation
ights arising
Kinder- und
ringing and
termine the
s to fulfil its
uthorized to
them or are
Law Court
ndangered.
ir physical,
langer must
es.
reaction to
te orders to
der institu-
r from the
sary, e.g. to
oleness and
1666a I, II
f the Court



is under an obligation to do so whenever the danger to the child's welfare ceases to be imminent.[1]

1 *Cf.* §1696 II, III BGB

## II. Management of Financial Affairs

*203.* §1666 BGB also grants the Court powers over the child's assets where those are put into jeopardy by abuse of parental care, neglect, inadvertent behaviour of the parents or the conduct of third parties. The child's financial interests are endangered if the parents act blatantly contrary to economic principles or from motives of self-interest and thus risk diminishing or loss of the child's fortune or his indebtedness, *cf.* also §1666 II BGB. Again, the Court enjoys wide discretion in the orders it will make while it is bound by the principle of proportionality.

## §13 Change in Parental Care

*204.* Parental care may be subject to changes brought about by declarations which the parents – e.g. the unmarried father, §1626a I No. 1 BGB – may make themselves.[1] But changes will also follow by law where one of the parents who enjoy joint parental care dies or otherwise becomes unavailable, §1680 I, III; 1681, 1678 I BGB. Furthermore, Court orders may alter the situation in relation to parental care in a variety of cases, e.g. when the sole holder of parental care dies or becomes otherwise unavailable,[2] or where the child's welfare is endangered, §1666 BGB.

1 *See supra* No. 174sqq.
2 *See* §§1680 II III; 1681 1678 II BGB

## I. Suspension of Parental Care

*205.* The BGB knows several instances in which parental care may be suspended by Court order, i.e. where one or both of the parents formally retain their position as holders of parental care, but may not exercise this right any longer. This will happen where the Court declares a long-term inability to act as a parent, §1674 I BGB. This may be the case where a long-term prison sentence has been declared, but also if the parent is without (§1673 I BGB) or of limited legal capacity (§1673 II BGB). In the latter case the parent may still exercise parental care in certain areas, *see* §1673 II 2 BGB.

*206.* If joint parental care has been suspended, the other parent may act alone provided he holds parental care himself. Where this is not the case the Court will transfer parental care to the other parent provided this agrees with the child's welfare.