UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DOMINIK KUFNER            :
                          :
        v.                :        C.A. No. 07-046S
                          :
TINA KUFNER               :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

**Background**

On April 11, 2007, Petitioner moved for an award of fees and costs as the prevailing party under 42 U.S.C. § 11607(b)(3).  (Document No. 93).  The International Child Abduction Remedies Act ("ICARA") provides that "any court ordering the return of a child [under the Act] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceeding in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate."  42 U.S.C. § 11607(b)(3) (emphasis added).  Pursuant to this statutory mandate, Petitioner sought an award of $917,175.50 in fees and costs incurred in successfully prosecuting his petition for an order returning the parties' two sons to Germany.  (Document No. 93 at pp. 2, 36).  Respondent objected.  (Document Nos. 94, 99 and 102).  Although Respondent was represented by counsel during the trial of this case, she was pro se when Petitioner's Motion for Fees and Costs was briefed and decided.

By Order dated May 23, 2007, the Court granted Petitioner's Motion in part and ordered reimbursement by Respondent of fees and expenses totaling $354,717.06 – approximately 39% of Petitioner's total request. (Document No. 108). In awarding a reduced amount to Petitioner, the Court conducted a detailed review of the reasonableness of the hourly rates and attorney time requested by Petitioner as well as the necessity and reasonableness of the requested expenses. Id.

Shortly after the Order awarding fees and costs to Petitioner, successor counsel entered his appearance on behalf of Respondent and filed an Appeal of the May 23, 2007 Order. (Document Nos. 115, 116 and 121). By Text Order entered on August 10, 2007, Judge Smith denied Respondent's request for a hearing and her Appeal, and adopted the May 23, 2007 Order. Respondent appealed from Judge Smith's Orders. (Document No. 124).

On August 4, 2008, the First Circuit Court of Appeals vacated the award of fees and costs and remanded for the District Court to "reconsider the amount of the award in light of [Respondent's] claim of straitened financial circumstances." (Document No. 129 at p. 2). It concluded that "[i]n light of [Respondent's] claims and the terms[1] of the district court ruling in the underlying case,...it was an abuse of discretion for the district court not expressly to have considered [Respondent's] financial circumstances in determining the magnitude of the award of fees and costs." Id.

**Discussion**

---

[1] In particular, Judge Smith's observation that "any resolution of this matter or the underlying custody proceeding in Germany that prevents the children from spending significant time with their mother would be tremendously harmful," and his order or "undertaking" that the father "not unreasonably oppose [the mother's] efforts to obtain reasonable access and visitation with the children." Kufner v. Kufner, 480 F. Supp. 2d 491, 515-516 (D.R.I. 2007), aff'd, 519 F.3d 33 (1st Cir. 2008).

-2-

ICARA mandates an award of "necessary expenses" including legal fees to a prevailing petitioner "unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3).  Although the May 23, 2007 Order concluded that an award of fees and costs against Respondent would not be clearly inappropriate "[g]iven Judge Smith's decision in this case and the record as a whole," (Document No. 108 at p. 2), it did not expressly consider Respondent's claims of straitened financial circumstances and inability to pay the award.

The First Circuit has held that "it is clear from [ICARA] that the respondent has the burden to establish that a fee/expense order would be clearly inappropriate." Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir. 2004).  In this case, the First Circuit cited Whallon for the holding that "the financial plight of the respondent 'is an important factor to consider.'" (Document No. 129 at p. 1).  In Whallon, after reviewing the reasonableness and necessity of the fees and costs requested, the District Court imposed a "further" 25% reduction in the award of legal fees because of the respondent's financial limitations and "because both parties bear responsibility for the degree of enmity between them, which was in large part responsible for the legal costs." Whallon v. Lynn, No. Civ. A. 00-11009-RWZ, 2003 WL 1906174 (D. Mass. April 18, 2003). In support, the District Court in Whallon cited "two cases that have considered a respondent's limited financial means and the economic impact on the children in reducing a fee award." Whallon, 356 F.3d at 139 (citing Rydder v. Rydder, 49 F.3d 369, 373-374 (8th Cir. 1995) (46 percent reduction); and Berendsen v. Nichols, 938 F. Supp. 737, 739 (D. Kan. 1996) (15 percent reduction)).

The parties' post-remand submissions contain the same level of distrust, rhetoric and animosity as was present during and attendant to most of the trial before Judge Smith. Petitioner first argues that there is "abundant evidence" that both myself and Judge Smith considered Respondent's financial circumstances at the time of the fee award. (Document No. 141 at p. 3). While I cannot speak for Judge Smith, I did not specifically consider Respondent's financial circumstances in awarding fees and costs to Respondent. If I had, I would have said so in the Order in question. As I made clear in that Order, my review focused on the necessity and reasonableness of the fees and costs requested by Petitioner. See Olesen-Frayne v. Olesen, No. 2:09-CV-49-FTM-29DNF, 2009 WL 3048451 (M.D. Fla. Sept. 21, 2009) (Although Court did not find an award of fees to be "clearly inappropriate," it utilized a lodestar approach in reviewing reasonableness and reduced the award by approximately 20%.).

In support of her opposition, Respondent submitted an Affidavit which indicated that she has not had "substantial gainful employment since 2000" and presently had no source of income other than alimony. (Document No. 137-2 at ¶ 3). As to alimony, she avers that she received $4,000.00 per month from September 2006 to May 2007 and reduced alimony of $800.00 per month thereafter to the present "after fees associated with the transfer and currency exchange." Id., ¶ 8. She further reports substantial debt, no assets of significance and residence for a period in 2008 in shelters. Id., ¶¶ 4, 13 and 16. In response, Petitioner questions Respondent's disposition of money from various sources allegedly obtained by her in 2006 and 2007. (Document No. 141 at pp. 3-4). Petitioner also indicates that Respondent is educated and able to work. Id.

Unfortunately, the "clearly inappropriate" standard contained in ICARA provides little definitive guidance for the courts as to its application.  The First Circuit has described the standard as a "broad caveat."  Whallon, 356 F.3d at 140.  ICARA does not say that an award of fees and costs should not be imposed against a party who is unable to pay.  "The purposes of awarding costs and fees under § 11607(b)(3) are (1) to restore the [Petitioner] to the financial position he...would have been in had there been no removal or retention; and (2) to deter such removal or retention" from happening in the first place.  Fridlund v. Spychaj-Fridlund, No. 5:09-273-JMH, 2009 WL 4168192 at *1 (E.D. Ky. Nov. 23, 2009) (citing Hague Internat'l Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01, 10511, 1986 WL 133056 (U.S. Dept. of State March 26, 1986)).  Obviously, a finding that denies or substantially reduces an award of fees and costs to a party who prevails in establishing wrongful removal under ICARA does not further either of these purposes.

The prior decisions of Judge Smith and the First Circuit express concern for maintaining Respondent's ability to spend time with her sons.  For instance, in his decision ordering the children returned to Germany, Judge Smith stated:

> [a]t a minimum, because Ms. Kufner must be allowed to have a continued role in the lives of the children, there must be no legal disincentive to her return to Germany. And, additionally, she must be allowed consistent access to and visitation with her children. However, it is also the case that based on the reports of the Guardian, the medical expert, and extensive record evidence in this case and careful observations of the Respondent over the course of a seven-day trial it is the view of this Court that Ms. Kufner is in need of immediate and most likely continuing psychological assessment and counseling or therapy as a condition to such access.

<u>Kufner v. Kufner</u>, 480 F. Supp. 2d 491, 515 (D.R.I. 2007).  He also ordered as an "undertaking"

that

> [u]ntil the appropriate German court makes specific determinations
> regarding custody and access and visitation rights, and consistent
> with his representations to this Court, Petitioner shall not
> unreasonably oppose Respondent's efforts to obtain reasonable
> access and visitation with the children, nor shall he oppose any
> effort on her part to obtain appropriate counseling to increase her
> visitation up to the point of and including joint custody.

<u>Id.</u> at 516.  The First Circuit affirmed Judge Smith's order returning the children to Germany and

the "undertakings" he imposed.  <u>Kufner v. Kufner</u>, 519 F.3d 33 (1st Cir. 2008).  In its August 4,

2008 remand order on the instant fee and cost dispute, the First Circuit indicated that "[i]f

[Respondent's] financial circumstances are as she claims, it appears that the burden of paying

an award in excess of $350,000.00 while simultaneously participating in contested custody

proceedings in Germany and obtaining psychological counseling might interfere with her ability

to spend time with her two young sons and maintain a home in which to visit with them."

(Document No. 129 at p. 2).

Sadly, it appears undisputed that Respondent has had little, if any, contact or

communication with her sons since they were returned to Germany in 2007.  Predictably, each

parent blames the other for this unfortunate circumstance.  For instance, Petitioner contends that

the lack of visitation is due to Respondent's refusal to cooperate and obtain psychological

treatment.  (Document No. 139 at p. 2 n.1 and Exs. 1 and 2).  In response, Respondent charges

that Petitioner has failed to comply with the undertakings ordered by Judge Smith in several

ways including "oppos[ing] and imped[ing] any contact between" Respondent and her sons "at every possible step during proceedings in Germany." (Document No. 137 at p. 2).

On July 9, 2009, I issued an Order requiring Petitioner to submit information to the Court regarding verification of compliance with such undertakings. (Document No. 150). Respondent was permitted to reply by July 31, 2009. Id. Petitioner filed a timely response on July 20, 2009. (Document Nos. 151-152). Respondent did not file a timely reply. However, she unsuccessfully attempted to file several documents during the month of September 2009 by faxing them to the Court. These filings were rejected as the Court does not accept filings transmitted by fax.[2] (See Document Nos. 153-155).

The undertakings required Petitioner (1) to secure dismissal of any criminal charges pending against Respondent in Germany at the time; (2) to pursue further medical treatment for one of the children; and (3) to "not unreasonably oppose Respondent's efforts to obtain reasonable access and visitation with the children." Kufner v. Kufner, 480 F. Supp. 2d at 516. Judge Smith ordered Petitioner to file verification that the first two had been accomplished and my Order sought proof of such verifications.

In his Reply, Petitioner points out that he updated the Court regarding the medical issue by letter dated November 6, 2007 which enclosed a copy of medical evaluations dated June 28, 2007 and March 23, 2007. (Document Nos. 151 and 152). As to the criminal charges, Petitioner

---

[2] Respondent is aware that the Court does not accept filings by fax or email. In a March 19, 2009 filing (Document No. 145), Respondent indicated that she was submitting the filing by overnight mail because a Supervisor in the Clerk's Office advised her that "no faxes or emails are accepted." Although Respondent's request to keep her actual address confidential and to provide a forwarding address to the Court was granted at a hearing held on April 22, 2009, she was never granted relief from any other rules and, in particular, never authorized to make ex parte filings with the Court by fax or email. Thus, all such filings have or will be rejected and returned to Respondent.

provided documentation indicating that he withdrew the criminal complaint against Respondent on March 29, 2007 and that the District Attorney thus terminated the criminal investigation of Respondent by Order dated April 2, 2007.  (Document No. 151, pp. 11-15).  Thus, Petitioner has shown sufficient verification of compliance for these purposes with the first two undertakings. Finally, the Order required Petitioner to report on the status of legal proceedings in Germany to collect the fee award vacated by the First Circuit.  Petitioner has provided the Affidavit of a German lawyer who represents him in such proceedings and avers to the Court that (1) efforts to enforce a judgment on such fee award against Respondent were discontinued following the First Circuit's decision vacating the fee award; and (2) Respondent "faces no legal danger until [he] reinstitute[s] enforcement efforts."  (Document No. 151, pp. 16-22).  Thus, Respondent's allegations that Petitioner has failed to comply with Judge Smith's undertakings are not supported and does not warrant a finding that an award of fees to Petitioner is "clearly inappropriate."

A review of the cases applying ICARA's "clearly inappropriate" caveat reveals that the analysis is highly fact specific and involves an equitable balancing of several factors including financial circumstances.  See Neves v. Neves, 637 F. Supp. 2d 322, 345 (W.D.N.C. 2009) (award of fees and costs to mother not "clearly inappropriate" where father made good faith, but unsuccessful, "grave risk" arguments that he removed children from Germany to United States due to racial and sexual risks, was unemployed, and had no money or assets other than a residence in Germany occupied by the mother and children); Poliero v. Centenaro, No. 09-CV-2682 (RRM) (CLP), 2009 WL 2947193 (E.D.N.Y. Sept. 11, 2009) (award of fees and costs to

father "clearly inappropriate" where father controls the finances, and mother was unemployed, had no appreciable assets, lived on payments from father and was represented by court-appointed pro bono counsel); and Clarke v. Clarke, C.A. No. 08-CV-690, 2008 WL 5191682 (E.D.Pa. Dec. 11, 2008) and Document No. 59 (award of fees and costs to father in the amount sought – $163,505.89 – was "clearly inappropriate" given mother's "dire" financial circumstances and court awarded a reduced amount – $77,209.77 – after considering mother's "financial circumstance, and, to some extent, her motivation in creating the need for a Hague Convention petition...in the first place" and "balancing between what was necessary for [the father] and what is appropriate to assess against [the mother]").

In this case, even considering Respondent's financial circumstances, she has not met her burden of establishing that any award of fees or costs to Petitioner would be "clearly inappropriate."  Although it is uncontradicted that Respondent is unemployed and relies upon alimony, the record is less clear as to the assets, if any, awarded to Respondent as a result of the divorce.   Petitioner identifies several significant payments to Respondent or financial transfers/withdrawals by her.  Further, Petitioner points out that Respondent has offered no explanation as to the disposition of such assets, other than her conclusory assertion of indigency. See Document No. 141.

Balancing all of the relevant factors and crediting Respondent's financial claims to the extent supported by the record, a further reduction is warranted but not a finding that any award would be clearly inappropriate.  To deny any award to Petitioner would undermine the dual statutory purposes of Section 11607(b)(3) – restitution and deterrence (both general as to the

public and specific as to the Respondent).  Although it is truly tragic that Respondent has had little, if any, contact with her sons since this case was tried, she has not shown that this has been caused by the prospect of a fee award in Petitioner's favor.  The bottom-line is that Judge Smith determined (and the First Circuit affirmed) that Respondent wrongfully removed her sons from Germany to the United States and rejected her "grave risk of harm" defense which was primarily based on Respondent's unsubstantiated allegations of sexual abuse against Petitioner.[3]  In the end, it was Respondent's serious allegations, her ability to retain a team of highly competent and dedicated pro bono attorneys to pursue her allegations at trial, and her increasingly erratic behavior as the trial progressed and thereafter, which turned this case into an unusually expensive and time-consuming proceeding.  On balance, it would be inequitable to relieve Respondent from the burden of at least sharing in such costs and fees, and would undermine  the statutory goals of restitution and particularly deterrence underlying Section 11607(b)(3).

**Conclusion**

Thus, for the foregoing reasons, I recommend a further 25% reduction in the fee and cost awards recommended in my May 23, 2007 recommendation based on Respondent's financial condition and, in particular, that Judge Smith ORDER Respondent to reimburse Petitioner for his attorneys' fees in the amount of $186,608.25 and expenses and costs in the amount of $79,429.55 pursuant to 42 U.S.C. § 11607(b)(3).

---

[3] Judge Smith observed that "[w]here Ms. Kufner sees smoke…, there is not only no fire, but there is not even smoke" and concluded that there was an "overwhelming absence of any evidence suggesting the children were subjected to sexual abuse." Kufner v. Kufner, 480 F. Supp. 2d at 509.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See  Fed. R. Civ. P. 72(b); LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond_____
LINCOLN D. ALMOND
United States Magistrate Judge
January 15, 2010